Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERET ISHAK, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WM TECHNOLOGY, INC. f/k/a SILVER SPIKE ACQUISITION CORP., CHRISTOPHER BEALS, ARDEN LEE, DOUGLAS FRANCIS, SUSAN ECHERD, MARY HOITT, SCOTT GORDON, WILLIAM HEALY, and GREGORY M. GENTILE<br><br>Defendants. | No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>CLASS ACTION</u><br><br>JURY TRIAL DEMANDED |

Plaintiff Seret Ishak ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding WM Technology, Inc. ("WM" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded WM Technology, Inc. securities, between May 25, 2021, and September 24, 2024, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased WM securities during the Class Period and was economically damaged thereby.

7.      Defendant WM Technology, Inc. describes itself as the operator of a "leading online cannabis marketplace for consumers together with a comprehensive set of eCommerce and compliance software solutions for cannabis businesses[.]"

8.      WM is incorporated in California and its principal executive offices are located at 41 Discovery Irvine, California, 92618. The Company's Class A common stock trades on the NASDAQ exchange under the ticker symbol "MAPS". The Company's warrants trade on the NASDAQ under the ticker symbol "MAPSW".

9.      Until June 16, 2021, WM was a private company, then known as WM Holding Company, LLC ("Legacy WM"). On June 16, 2021, Legacy WM merged with a Special Purpose Acquisition Company ("SPAC") named Silver Spike Acquisition Corp "(Silver Spike"). Up until that time, Silver Spike shares had traded on the NASDAQ under the ticker "SSPK".

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

10.     Upon the consummation of the merger, both Legacy WM and Silver Spike ceased to exist and were replaced by WM Technology, Inc. as we now know it, and began to trade as a public company under the "MAPS" ticker.

11.     Defendant Christopher ("Beals") served as the Chief Executive Officer of WM Technology and its private company predecessor entity from March 2019 until his departure from the company in November 2022.

12.     Defendant Arden Lee ("Lee") served as the Chief Financial Officer of WM Technology and its private company predecessor entity from February 2019 through his voluntary departure from the company in July 2023.

13.     Defendant Douglas Francis ("Francis") has served as WM's Executive Chair (the Company's principal officer) from April 2023 to the present.

14.     Defendant Susan Echard ("Echard") has served as WM's Interim Chief Financial Officer from February 2024 to the present.

15.     Defendant Mary Hoitt ("Hoitt") served as interim chief financial officer of WM Technology from July 2023 until approximately February 2024.

16.     Scott Gordon served as the Chief Executive Officer of Silver Spike from its inception until the merger with Legacy WM.

17.     William Healy served as the President of Silver Spike from its inception until the merger with Legacy WM.

18.     Gregory M. Gentile served as the Chief Financial Officer of Silver Spike from its inception until the merger with Legacy WM.

19.     Defendants Beals, Lee, Francis, Echard, Hoitt, Gordon, Healy, and Gentile are collectively referred to herein as the "Individual Defendants."

20.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

(c)    was privy to confidential proprietary information concerning the Company and its business and operations;

(d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)    approved or ratified these statements in violation of the federal securities laws.

21.    The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

22.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to WM under *respondeat superior* and agency principles.

23.    Defendant WM and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

## Materially False and Misleading Statements Issued During the Class Period

24.    As a public company, WM is required to file periodic financial statements and other materials with the Securities and Exchange Commission of the United States ("SEC").

25.    On May 25, 2021, the Company filed with the SEC a fourth Amended Registration Statement (the "Registration Statement") under the SEC's Form S-4.

4

26.    On May 26, 2021, the Company filed with the SEC its definitive proxy on SEC Form Schedule 14A (the "Proxy") to solicit votes for its June 10, 2021, Special Meeting to approve the planned merger between Legacy WM and Silver Spike.

27.    Both the Proxy and the Registration Statement contained the following table:

| | Year Ended December 31, | | | Three Months Ended March 31, | |
|---|---|---|---|---|---|
| | 2018 | 2019 | 2020 | 2020 | 2021 |
| | (dollars in thousands, except for revenue by client) | | | | |
| Paying clients[3] | 4,024 | 4,644 | 3,786 | 4,101 | 4,058 |
| MAUs (in thousands)[4] | 4,684 | 8,009 | 10,000 | 6,457 | 9,163 |

28.    This statement, made in both the Proxy and the Registration Statement, was materially false and misleading at the time it was made because the monthly active user ("MAU") metric had been willfully inflated, and did not accurately represent the amount of monthly active users.

29.    In its four quarterly SEC filings between August 13, 2021, and May 6, 2022, WM reported the following MAU metrics:

| Filing Date | Reporting Period | Disclosed MAU |
|---|---|---|
| 8/13/2021 | 2Q 2021 | 12.3 million "monthly active users" |
| 11/12/2021 | 3Q 2021 | 13.9 million "monthly active users" |
| 2/25/2022 | 4Q 2021 | 15.73 million "monthly active users" |
| 5/6/2022 | 1Q 2022 | 16.43 million "monthly active users" |

30.    All four of these statements were materially false and misleading because the metric had been willfully inflated, and did not accurately represent the amount of monthly active users.

31.    On February 25, 2022, WM filed with the SEC its annual report on Form 10-K for the fiscal year ended December 31, 2021 (the "2021 Annual Report"). Attached to the 2021 Annual Report were certifications pursuant to the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Beals and Lee attesting to the accuracy of financial reporting, to the Company's implementation of adequate internal controls over financial reporting, and to the disclosure of all fraud.

32.    The 2021 Annual Report SOX certifications were false because the Company, in allowing a key financial metric to be manipulated, did not maintain adequate internal controls over financial reporting.

33.    On August 9, 2022, WM filed with the SEC its quarterly report on Form 10-Q for the fiscal quarter ended June 30, 2022 (the "Q2 2022 Annual Report"). Attached to the Q2 2022 Annual Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Francis and Lee attesting to the accuracy of financial reporting, to the Company's implementation of adequate internal controls over financial reporting, and to the disclosure of all fraud.

34.    The Q2 2022 Quarterly Report SOX certifications were false because the Company, in allowing a key financial metric to be manipulated, did not maintain adequate internal controls over financial reporting.

35.    On November 8, 2022, WM filed with the SEC its quarterly report on Form 10-Q for the fiscal quarter ended September 30, 2022 (the "Q3 2022 Annual Report"). Attached to the Q3 2022 Annual Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Francis and Lee attesting to the accuracy of financial reporting, to the Company's implementation of adequate internal controls over financial reporting, and to the disclosure of all fraud.

36.    The Q3 2022 Quarterly Report SOX certifications were false because the Company, in allowing a key financial metric to be manipulated, did not maintain adequate internal controls over financial reporting.

37.     On May 16, 2023, WM filed with the SEC its annual report on Form 10-K for the fiscal year ended December 31, 2022 (the "2022 Annual Report"). Attached to the 2022 Annual Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Francis and Lee attesting to the accuracy of financial reporting, to the Company's implementation of adequate internal controls over financial reporting, and to the disclosure of all fraud.

38.     The 2022 Annual Report SOX certifications were false because the Company, in allowing a key financial metric to be manipulated, did not maintain adequate internal controls over financial reporting.

39.     On May 9, 2023, WM filed with the SEC its quarterly report on Form 10-Q for the fiscal quarter ended March 31, 2023 (the "Q1 2023 Quarterly Report"). Attached to the Q1 2023 Quarterly Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Francis and Lee attesting to the accuracy of financial reporting, to the Company's implementation of adequate internal controls over financial reporting, and to the disclosure of all fraud.

40.     The Q1 2023 Quarterly Report SOX certifications were false because the Company, in allowing a key financial metric to be manipulated, did not maintain adequate internal controls over financial reporting.

41.     On August 9, 2023, WM filed with the SEC its quarterly report on Form 10-Q for the fiscal quarter ended June 30, 2023 (the "Q2 2023 Quarterly Report"). Attached to the Q2 2023 Quarterly Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Francis and Hoitt attesting to the accuracy of financial reporting, to the Company's implementation of adequate internal controls over financial reporting, and to the disclosure of all fraud.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

42.    The Q2 2023 Quarterly Report SOX certifications were false because the Company, in allowing a key financial metric to be manipulated, did not maintain adequate internal controls over financial reporting.

43.    On November 8, 2023, WM filed with the SEC its quarterly report on Form 10-Q for the fiscal quarter ended September 30, 2022 (the "Q3 2023 Quarterly Report"). Attached to the Q3 2023 Quarterly Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Francis and Hoitt attesting to the accuracy of financial reporting, to the Company's implementation of adequate internal controls over financial reporting, and to the disclosure of all fraud.

44.    The Q3 2023 Quarterly Report SOX certifications were false because the Company, in allowing a key financial metric to be manipulated, did not maintain adequate internal controls over financial reporting.

45.    On May 24, 2024, WM filed with the SEC its annual report on Form 10-K for the fiscal year ended December 31, 2023 (the "2023 Annual Report"). Attached to the 2023 Annual Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Francis and Echard attesting to the accuracy of financial reporting, to the Company's implementation of adequate internal controls over financial reporting, and to the disclosure of all fraud.

46.    On May 24, 2024, WM filed with the SEC its quarterly report on Form 10-Q for the fiscal quarter ended March 31, 2024 (the "Q1 2024 Quarterly Report"). Attached to the Q1 2024 Quarterly Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Francis and Lee attesting to the accuracy of financial reporting, to the Company's implementation of adequate internal controls over financial reporting, and to the disclosure of all fraud.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

47.    The Q1 2024 Quarterly Report SOX certifications were false because the Company, in allowing a key financial metric to be manipulated, did not maintain adequate internal controls over financial reporting

48.    On August 8, 2024, WM filed with the SEC its quarterly report on Form 10-Q for the fiscal quarter ended June 30, 2023 (the "Q2 2024 Quarterly Report"). Attached to the Q2 2024 Quarterly Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Francis and Hoitt attesting to the accuracy of financial reporting, to the Company's implementation of adequate internal controls over financial reporting, and to the disclosure of all fraud.

49.    The Q2 2024 Quarterly Report SOX certifications were false because the Company, in allowing a key financial metric to be manipulated, did not maintain adequate internal controls over financial reporting.

## THE TRUTH BEGINS TO EMERGE

50.    The truth began to emerge on August 9, 2022, when, in a Form 8-K and its Form 10-Q for the quarter ended June 30, 2022, the Company disclosed that its board of directors had received an internal complaint regarding "the calculation, definition, and reporting of [its] MAUs."

51.    The August 9, 2022 10-Q further disclosed that:

…one of the ways in which we acquire users is through paid advertising. To an increasing degree over time, growth of our monthly active users, reported as MAUs, has been driven by the purchase of pop-under advertisements, which are marketing advertisements on third party websites that automatically present our platform on users' screens in certain circumstances. Our internal data suggests that the vast majority of users who are directed to weedmaps.com via pop-under advertisements close the site without clicking on any links. Based on management's review, users whose access to the website resulted from these pop-under advertisements represented approximately 65% of our MAUs as of June 30, 2022, and 54%, 50%

9

and 54% of our MAUs as of March 31, 2022, December 31, 2021 and September 30, 2021, respectively.

52.    On this news, WM stock dropped from $3.46 a share to $2.59 a share – a drop of over 25%.

53.    However, it was not until September 24, 2024, that Plaintiff and the class became aware of all the facts constituting this claim – particularly the element of scienter on the part of the Defendants. On that day, the SEC issued a litigation release (the "Release") in which it announced that it had "charged public company WM Technology, Inc. (Nasdaq: MAPS), its former CEO, Christopher Beals, and its former CFO, Arden Lee, for making negligent misrepresentations in WM Technology's public reporting of a self-described key operating metric, the "monthly active users," or "MAU," for WM Technology's online cannabis marketplace."

54.    The Release noted that the SEC had "also instituted a related settled administrative proceeding against WM Technology" and that "WM Technology also agreed to pay a civil penalty of $1,500,000."

55.    The Release further detailed the allegations in the underlying Complaint, writing that:

The SEC's complaint against Beals and Lee alleges that from May 2021 to May 2022, including during a merger with a special purpose acquisition company through which WM Technology became a public company in June 2021, WM Technology misleadingly reported substantial and continued MAU growth and emphasized the strength and expansion of its user base in its public filings and earnings calls. According to the complaint, although WM Technology's SEC filings stated that it determined its MAU by counting the total number of users that had "engaged with" the WM Technology site in a given period, in truth, a large and increasing percentage of the users of the WM Technology site were instead persons who visited a third-party site, and who were then automatically shown the WM Technology site by way of a "pop-under" advertisement. As alleged by the SEC, these purportedly "active" users did not volitionally seek out the WM

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Technology site, and, in most instances, did not click on any links or engage in measurable activity on the WM Technology site. The SEC's complaint further alleges that despite the publicly reported growth in MAU, WM Technology's user engagement metrics were stagnant or declining. The SEC also alleges that Beals and Lee were repeatedly advised of these declining user trends on the WM Technology site and the fact that these non-engaging users were making up an increasingly large percentage of WM Technology's total MAU, but failed to reasonably follow up and negligently continued to sign WM Technology's SEC filings and make public statements that reported MAU numbers that included non-engaging users when discussing the company's purportedly growing user base.

56.    Per the release, as part of its agreement to settle the SEC's administrative claims, the Company "agreed to the entry of a cease-and-desist order prohibiting further violations of Sections 17(a)(2) and (3) of the Securities Act and Sections 13(a) and 14(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, 13a-13, 13a-15(a), and 14a-9 thereunder."

57.    On this news, the price of WM Technology, Inc. common stock fell by 1.9% to close at $0.92 on September 25, 2024.

58.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

59.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired the Company's securities publicly traded on NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

1
2
representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

3
4
5
6
7
8
60.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

9
10
11
61.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

12
13
14
15
62.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

16
17
18
63.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

19
20
•    whether the Exchange Act was violated by Defendants' acts as alleged herein;

21
22
23
•    whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;

24
25
26
27
•    whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

28

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

1       •      whether the Defendants caused the Company to issue false and misleading filings during the Class Period;

•      whether Defendants acted knowingly or recklessly in issuing false filings;

•      whether the prices of the Company securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

•      whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

64.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

65.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

•      the Company's shares met the requirements for listing, and were listed and actively traded on NASDAQ, an efficient market;

•      as a public issuer, the Company filed periodic public reports;

•      the Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

•      the Company's securities were liquid and traded with moderate to heavy volume during the Class Period; and

13

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

• the Company was followed by a number of securities analysts who wrote reports that were widely distributed and publicly available.

66. Based on the foregoing, the market for the Company's securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

67. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder Against All Defendants

68. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

69. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

70. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

71. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

14

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

72. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

73. Individual Defendants, who are the senior officers of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or any other of the Company's personnel to members of the investing public, including Plaintiff and the Class.

74. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

75.     Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

76.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

77.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

78.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

79.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's business practices.

80.    As officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's' financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

81.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

82.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)    declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel;

(b)    awarding damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, together with interest thereon;

17

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

1    (c)    awarding Plaintiff and the Class reasonable costs and expenses

2    incurred in this action, including counsel fees and expert fees; and

3    (d)    awarding Plaintiff and other members of the Class such other and

4    further relief as the Court may deem just and proper.

5    <u>**JURY TRIAL DEMANDED**</u>

6    Plaintiff hereby demands a trial by jury.

7

8    Dated: October 17, 2024

9    **THE ROSEN LAW FIRM, P.A.**

<u>/s/ Laurence M. Rosen</u>

10    Laurence M. Rosen (SBN 219683)

11    355 South Grand Avenue, Suite 2450

Los Angeles, CA 90071

12    Telephone: (213) 785-2610

Facsimile: (213) 226-4684

13    Email: lrosen@rosenlegal.com

14

15    *Counsel for Plaintiff*

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS