POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Facsimile: (917) 463-1044
jpafiti@pomlaw.com

*Counsel for Movant Vanderlei Melchior
and Proposed Lead Counsel for the Class*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERET ISHAK, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WM TECHNOLOGY, INC. f/k/a SILVER SPIKE ACQUISITION CORP., CHRISTOPHER BEALS, ARDEN LEE, DOUGLAS FRANCIS, SUSAN ECHERD, MARY HOITT, SCOTT GORDON, WILLIAM HEALY, and GREGORY M. GENTILE,<br><br>Defendants. | Case No. 2:24-cv-08959-ODW-PVC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF VANDERLEI MELCHIOR FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**<br><br>DATE:  January 13, 2025<br>TIME:  1:30 p.m.<br>JUDGE:  Otis D. Wright II<br>CTRM:  5D |

MEMORANDUM OF POINTS AND AUTHORITIES - 2:24-cv-08959-ODW-PVC

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ...................................................................................1

II.     STATEMENT OF FACTS .........................................................................................2

III.    ARGUMENT ..............................................................................................................6

        A.      MELCHIOR SHOULD BE APPOINTED LEAD PLAINTIFF ...................6

                1.      Melchior Is Willing to Serve as Class Representative .............................7

                2.      Melchior Has the "Largest Financial Interest" ........................................8

                3.      Melchior Otherwise Satisfies Rule 23's Requirements.............................9

                4.      Melchior Will Fairly and Adequately Represent the Interests
                        of the Class and Is Not Subject to Unique Defenses .............................12

        B.      LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD
                BE APPROVED.............................................................................................13

IV.     CONCLUSION.........................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ...................................................................................10

*Hessefort v. Super Micro Comput., Inc.*,
    317 F. Supp. 3d 1056 (N.D. Cal. 2018) ...................................................................10

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ......................................................................................8

*In re Comverse Tech., Inc. Sec. Litig.*,
    No. 06-CV-1825 (NGG) (RER), 2007 WL 680779
    (E.D.N.Y. Mar. 2, 2007) ......................................................................................8, 14

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ...........................................................................8

*In re Petrobras Securities Litigation*,
    No. 14-cv-09662 (S.D.N.Y.)......................................................................................13

*In re Solar City Corp. Sec. Litig.*,
    No. 16-CV-04686-LHK, 2017 WL 363274 (N.D. Cal. Jan. 25, 2017)......................10

*Knox v. Yingli Green Energy Holding Co.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) ..................................................................8, 9

*Lax v. First Merchants Acceptance Corp.*,
    No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997) ....................................8, 9

*Nicolow v. Hewlett Packard Co.*,
    No. 12-05980 CRB, 2013 WL 792642 (N.D. Cal. Mar. 4, 2013)...............................9

*Osher v. Guess?, Inc.*,
    No. CV01-00871LGB(RNBX), 2001 WL 861694
    (C.D. Cal. Apr. 26, 2001) .........................................................................................13

*Richardson v. TVIA, Inc.*,
    No. C 06 06304 RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007)......................10

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .......................................................................................11

*Tai Jan Bao v. SolarCity Corp.*,
   No. 14-CV-01435-BLF, 2014 WL 3945879 (N.D. Cal. Aug. 11, 2014) ....................10

**Statutes**

15 U.S.C. § 78u-4..........................................................................................................*passim*

Private Securities Litigation Reform Act of 1995 .......................................................*passim*

Securities Act of 1933 ...........................................................................................................6

Securities Exchange Act of 1934 .......................................................................1, 6, 8, 11

**Rules**

Fed. R. Civ. P. 23 ..........................................................................................................*passim*

Movant Vanderlei Melchior ("Melchior") respectfully submits this Memorandum of Points and Authorities in support of his motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) appointing Melchior as Lead Plaintiff on behalf of a class (the "Class") consisting of persons or entities who purchased or otherwise acquired publicly traded WM Technology, Inc. ("WM" or the "Company") securities between May 25, 2021 and September 24, 2024, inclusive (the "Class Period"); and (2) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## I.    PRELIMINARY STATEMENT

The complaint ("Complaint") (Dkt. No. 1) in the above-captioned action (the "Action") alleges that the above-captioned defendants ("Defendants") defrauded investors in violation of the Exchange Act.  WM investors, including Melchior, incurred significant losses following the disclosures of Defendants' alleged fraud, which caused WM's share price to fall sharply, damaging Melchior and other WM investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant that possesses the largest financial interest in the outcome of the Action and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  During the Class Period, Melchior purchased 5,000 shares of WM Class A common stock, expended $46,950 on these purchases, retained 5,000 of his shares of

WM Class A common stock, and, as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $41,963.  *See* Declaration of Jennifer Pafiti in Support of Motion ("Pafiti Decl."), Exhibit ("Ex.") A.  Accordingly, Melchior believes that he has the largest financial interest in the relief sought in this Action.  Beyond his considerable financial interest, Melchior also meets the applicable requirements of Rule 23 because his claims are typical of absent Class members and because he will fairly and adequately represent the interests of the Class.

To fulfill his obligations as Lead Plaintiff and vigorously prosecute the Action on behalf of the Class, Melchior has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Melchior respectfully requests that the Court enter an Order appointing him as Lead Plaintiff for the Class and approving his selection of Pomerantz as Lead Counsel for the Class.

## II.    STATEMENT OF FACTS

As alleged in the Complaint in the Action, WM describes itself as the operator of a "leading online cannabis marketplace for consumers together with a comprehensive set of eCommerce and compliance software solutions for cannabis businesses[.]"

WM is incorporated in California and its principal executive offices are located in California. The Company's Class A common stock trades on the NASDAQ exchange under the ticker symbol "MAPS". The Company's warrants trade on the NASDAQ under the ticker symbol "MAPSW".

Until June 16, 2021, WM was a private company, then known as WM Holding Company, LLC ("Legacy WM"). On June 16, 2021, Legacy WM merged with a special purpose acquisition company named Silver Spike Acquisition Corp. "(Silver Spike"). Up until that time, Silver Spike shares had traded on the NASDAQ under the ticker "SSPK".

Upon the consummation of the merger, both Legacy WM and Silver Spike ceased to exist and were replaced by WM as we now know it, and began to trade as a public company under the "MAPS" ticker.

As a public company, WM is required to file periodic financial statements and other materials with the U.S. Securities and Exchange Commission ("SEC").

On May 25, 2021, the Company filed with the SEC a fourth Amended Registration Statement under the SEC's Form S-4.

On May 26, 2021, the Company filed with the SEC its definitive proxy on SEC Form Schedule 14A to solicit votes for its June 10, 2021, Special Meeting to approve the planned merger between Legacy WM and Silver Spike.

Throughout the Class Period, Defendants made materially false and misleading statements and/or failed to disclose that: (i) WM's monthly active user ("MAU") metric

had been willfully inflated, and did not accurately represent the amount of MAUs; and (ii) the Company, in allowing a key financial metric to be manipulated, did not maintain adequate internal controls over financial reporting.

The truth began to emerge on August 9, 2022, when, in a Form 8-K and its Form 10-Q for the quarter ended June 30, 2022, the Company disclosed that its board of directors had received an internal complaint regarding "the calculation, definition, and reporting of [its] MAUs."

The August 9, 2022 10-Q further disclosed that:

[O]ne of the ways in which we acquire users is through paid advertising. To an increasing degree over time, growth of our monthly active users, reported as MAUs, has been driven by the purchase of pop-under advertisements, which are marketing advertisements on third party websites that automatically present our platform on users' screens in certain circumstances. Our internal data suggests that the vast majority of users who are directed to weedmaps.com via pop-under advertisements close the site without clicking on any links. Based on management's review, users whose access to the website resulted from these pop-under advertisements represented approximately 65% of our MAUs as of June 30, 2022, and 54%, 50% and 54% of our MAUs as of March 31, 2022, December 31, 2021 and September 30, 2021, respectively.

On this news, WM's stock price dropped from $3.46 a share to $2.59 a share—a drop of over 25%.

However, it was not until September 24, 2024 that the Class became aware of Defendants' scienter.  On that day, the SEC issued a litigation release (the "Release") in which it announced that it had "charged public company WM Technology, Inc. (Nasdaq: MAPS), its former CEO, Christopher Beals, and its former CFO, Arden Lee, for making

negligent misrepresentations in WM Technology's public reporting of a self-described key operating metric, the 'monthly active users,' or 'MAU,' for WM Technology's online cannabis marketplace."

The Release noted that the SEC had "also instituted a related settled administrative proceeding against WM Technology" and that "WM Technology also agreed to pay a civil penalty of $1,500,000."

The Release further detailed the allegations in the underlying complaint, writing that:

The SEC's complaint against Beals and Lee alleges that from May 2021 to May 2022, including during a merger with a special purpose acquisition company through which WM Technology became a public company in June 2021, WM Technology misleadingly reported substantial and continued MAU growth and emphasized the strength and expansion of its user base in its public filings and earnings calls. According to the complaint, although WM Technology's SEC filings stated that it determined its MAU by counting the total number of users that had "engaged with" the WM Technology site in a given period, in truth, a large and increasing percentage of the users of the WM Technology site were instead persons who visited a third-party site, and who were then automatically shown the WM Technology site by way of a "pop-under" advertisement. As alleged by the SEC, these purportedly "active" users did not volitionally seek out the WM Technology site, and, in most instances, did not click on any links or engage in measurable activity on the WM Technology site. The SEC's complaint further alleges that despite the publicly reported growth in MAU, WM Technology's user engagement metrics were stagnant or declining. The SEC also alleges that Beals and Lee were repeatedly advised of these declining user trends on the WM Technology site and the fact that these non-engaging users were making up an increasingly large percentage of WM Technology's total MAU, but failed to reasonably follow up and negligently continued to sign WM Technology's SEC filings and make public statements that reported MAU numbers that included non-engaging users when discussing the company's purportedly growing user base.

Per the Release, as part of its agreement to settle the SEC's administrative claims, the Company "agreed to the entry of a cease-and-desist order prohibiting further violations of Sections 17(a)(2) and (3) of the Securities Act and Sections 13(a) and 14(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, 13a-13, 13a-15(a), and 14a-9 thereunder."

On this news, the price of WM common stock fell by 1.9% to close at $0.92 on September 25, 2024.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Melchior and other Class members have suffered significant losses and damages.

## III.   ARGUMENT

### A.    MELCHIOR SHOULD BE APPOINTED LEAD PLAINTIFF

Melchior should be appointed Lead Plaintiff because he has timely filed a motion for appointment as Lead Plaintiff, has the largest financial interest in this Action to his knowledge, and otherwise strongly satisfies the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).  Additionally, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and

to do so by the later of (1) 90 days after the date of publication, or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Melchior satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1.    Melchior Is Willing to Serve as Class Representative

On October 17, 2024, counsel for plaintiff in the Action caused the statutorily required Notice to be published via *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, announcing that a securities class action lawsuit had been filed on behalf of WM investors, and advising investors in WM securities that they had until December 16, 2024—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as lead plaintiff. *See* Pafiti Decl., Ex. B.

Melchior has filed the instant motion pursuant to the Notice, and he has attached a sworn Certification attesting that he is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C. Accordingly, Melchior satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2. Melchior Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of his knowledge, Melchior has the largest financial interest of any WM investor or investor group seeking to serve as Lead Plaintiff. For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (also referred to as "retained shares"); (3) the total net funds expended during the class period; and (4) the approximate losses suffered. No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997). In accord with other courts nationwide,[1] these so-called *Lax* factors have been adopted by courts in the Ninth Circuit, including in this District. *See, e.g.*, *Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163

---

[1] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007).

(C.D. Cal. 2015); *Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013).  Of the *Lax* factors, courts in the Ninth Circuit tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA.  *See, e.g.*, *Knox*, 135 F. Supp. 3d. at 1163; *Nicolow*, 2013 WL 792642, at *4.

During the Class Period, Melchior: (1) purchased 5,000 shares of WM Class A common stock; (2) expended $46,950 on his purchases of WM Class A common stock; (3) retained 5,000 of his shares of WM Class A common stock; and (4) as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $41,963 in connection with his Class Period transactions in publicly traded WM securities.  *See* Pafiti Decl., Ex. A.  To the extent that Melchior possesses the largest financial interest in the outcome of this litigation, he is the presumptive "most adequate" plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3.    Melchior Otherwise Satisfies Rule 23's Requirements

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable,
> (2) there are questions of law or fact common to the class, (3) the claims or

defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In determining whether a lead plaintiff movant satisfies Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead, a *prima facie* showing that the movant satisfies Rule 23's requirements is sufficient. *See Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-01 (N.D. Cal. 2018); *Tai Jan Bao v. SolarCity Corp.*, No. 14-CV-01435-BLF, 2014 WL 3945879, at *3 (N.D. Cal. Aug. 11, 2014). Moreover, a lead plaintiff movant "only needs to satisfy [Rule 23's] typicality and adequacy" requirements. *In re Solar City Corp. Sec. Litig.*, No. 16-CV-04686-LHK, 2017 WL 363274, at *5 (N.D. Cal. Jan. 25, 2017). Further, the Complaint in the Action sufficiently pleads Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Melchior.

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Melchior's claims are typical of those of the Class. Melchior alleges, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning WM, or by omitting to state material facts necessary to make the statements they did make not misleading. Melchior, like other Class members, purchased or otherwise acquired publicly traded WM securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosures of those misrepresentations and/or omissions that drove WM's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

In determining whether the adequacy of representation requirement of Rule 23(a)(4) is met, courts in the Ninth Circuit consider whether "the representative plaintiffs and their counsel have any conflicts of interest with other class members" and ask "will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citations omitted).

Melchior is an adequate representative for the Class. There is no evidence of antagonism or conflict between Melchior's interests and those of the Class, Melchior has submitted a sworn Certification declaring his commitment to protect the interests of the Class (*see* Pafiti Decl., Ex. C), and his significant financial interest demonstrates that he

has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class. Moreover, as set forth in greater detail below, in Pomerantz, Melchior has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submits his choice of Pomerantz to the Court for approval as Lead Counsel for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). In addition to Pomerantz, Melchior is also represented by The Schall Law Firm in this Action.

Further demonstrating his adequacy, Melchior has submitted a signed Declaration attesting to, *inter alia*, his age, his city and state of residence, his investing experience, his understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class. *See* Pafiti Decl., Ex. D.

### 4. Melchior Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption favoring Melchior's appointment as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)  will not fairly and adequately protect the interest of the class; or

(bb)  is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Melchior's ability and desire to fairly and adequately represent the Class has been discussed above.  Melchior is not aware of any unique defenses Defendants could raise that would render him inadequate to represent the Class.  Accordingly, Melchior should be appointed Lead Plaintiff for the Class.

**B.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED**

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court.  *See id.* § 78u-4(a)(3)(B)(v).  The Court should only interfere with a Lead Plaintiff's selection when necessary to "protect the interests of the class."  *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Osher v. Guess?, Inc.*, No. CV01-00871LGB(RNBX), 2001 WL 861694, at *4 (C.D. Cal. Apr. 26, 2001).

Here, Melchior has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the areas of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith.  *See* Pafiti Decl., Ex. E.  In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel.  *See id.*  For more than 85 years, Pomerantz has represented defrauded investors.  *See id.*  As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign

issuer and the fifth largest class action settlement ever achieved in the United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.*

As a result of its extensive experience in litigation involving issues similar to those raised in the instant Action, Melchior's counsel, Pomerantz, has the skill, knowledge, expertise, and experience that will enable the firm to prosecute this Action effectively and expeditiously. Thus, the Court may be assured that by approving Melchior's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

## IV. CONCLUSION

For the foregoing reasons, Melchior respectfully requests that the Court issue an Order: (1) appointing Melchior as Lead Plaintiff for the Class; and (2) approving his selection of Pomerantz as Lead Counsel for the Class.

Dated: December 16, 2024

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024

Telephone: (310) 405-7190
Facsimile: (917) 463-1044
jpafiti@pomlaw.com

*Counsel for Movant Vanderlei Melchior
and Proposed Lead Counsel for the Class*

THE SCHALL LAW FIRM
Brian Schall
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Movant Vanderlei
Melchior*

CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Jennifer Pafiti*
Jennifer Pafiti

## CERTIFICATE OF WORD COUNT

The undersigned, counsel of record for Vanderlei Melchior, certifies that this brief contains 3,579 words, which complies with the word limit of L.R. 11-6.1.

Executed on December 16, 2024.

/s/ *Jennifer Pafiti*
Jennifer Pafiti