O

# United States District Court
# Central District of California

| | |
|---|---|
| SERET ISHAK,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>WM TECHNOLOGY, INC. et al.,<br><br>　　　　　　　Defendants. | Case № 2:24-cv-08959-ODW (PVCx)<br><br>**ORDER APPOINTING LEAD PLAINTIFF AND CLASS COUNSEL [12, 16, 24]** |

## I.　INTRODUCTION

Plaintiff Seret Ishak brings this putative class action for securities fraud under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Securities Exchange Act") against Christopher Beals, Arden Lee, Douglas Francis, Susan Echerd, Mary Hoitt, Scott Gordon, William Healy, and Gregory M. Gentile ("Individual Defendants") and WM Technology, Inc. ("WM"). (Compl., ECF No 1.) Movants Jay Kang, Lawrence M. Jaramillo, and Vanderlei Melchior each seek appointment as lead plaintiff and their respective counsel as lead counsel. (Jaramillo Mot., ECF No. 12; Kang Mot., ECF No. 16; Melchior Mot., ECF No. 24.)

For the reasons discussed below, the Court **GRANTS** Movant Kang's Motion for Appointment and **DENIES** Movants Jaramillo's and Melchior's Motions for Appointment.[1]

## II.    BACKGROUND[2]

On June 16, 2021, WM Holding Company, LLC and Silver Spike Acquisition Corp. merged, forming WM. (Compl. ¶¶ 9–10.) WM is an eCommerce software technology company that operates an online cannabis marketplace. (*Id.* ¶ 7.) It trades on the NASDAQ exchange under the ticker symbol "MAPS". (*Id.* ¶ 8.)

Prior to the merger, on May 25, 2021, WM filed its fourth Amended Registration Statement under Form S-4 with the SEC. (*Id.* ¶ 25.) On May 26, 2021, WM filed its Form Schedule 14A definitive proxy statement with the SEC to solicit votes for its June 10, 2021 special meeting to approve the merger between WM Holding Company, LLC and Silver Spike Acquisition Corp. (*Id.* ¶ 26.) In both forms, WM inflated its monthly active user ("MAU") metric and did not accurately represent the true number of MAUs. (*Id.* ¶ 28.)

Thereafter, from August 13, 2021, through August 8, 2024, WM filed eleven Form 10-Q quarterly reports containing false and misleading statements inflating its MAU metric. (*Id.* ¶¶ 29–30, 33–49.) Between February 25, 2022, and August 8, 2024, WM filed three Form 10-K annual reports with the SEC covering fiscal years 2021 through 2023. (*Id.* ¶¶ 31, 37, 45.) Five Individual Defendants who were WM executives at some point during the relevant period—Beals, Lee, Francis, Hoitt, and Echard—each signed certifications attached to at least one of the quarterly and annual reports attesting to the report's accuracy, to WM's implementation of adequate internal controls over financial reporting, and to the disclosure of all fraud. (*Id.* ¶¶ 31, 33, 35, 37, 39, 41, 43, 45–46, 48.) These certifications were false because, by inflating its MAU

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

[2] The facts are drawn from Plaintiff's Complaint and the Court accepts as true for this motion all well-pleaded allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

metric, WM failed to maintain adequate internal controls over financial reporting. (*Id.* ¶¶ 32–49.)

On August 9, 2022, in WM's Form 8-K and Form 10-Q for the quarter ending on June 30, 2022, WM disclosed that its board of directors had received an internal complaint regarding "the calculation, definition, and reporting of [its] MAUs." (*Id.* ¶ 50.) WM's stock price subsequently dropped over 25%, from $3.46 a share to $2.59 a share. (*Id.* ¶ 52.)

On September 24, 2024, the SEC issued a litigation release in which it announced charges against WM, Beals, and Lee for negligently misrepresenting WM's MAU metric in their public reporting. (*Id.* ¶ 53.) Additionally, following a related SEC administrative proceeding, WM agreed to pay a civil penalty of $1,500,000 and to the entry of a cease-and-desist order prohibiting further violations of the Securities Exchange Act. (*Id.* ¶¶ 54–56.) WM's stock price subsequently dropped 1.9%, closing at $0.92 on September 25, 2024. (*Id.* ¶ 57.)

Ishak is a WM shareholder. (*Id.* ¶ 6.) On October 17, 2024, Ishak filed this putative class action asserting securities violations against WM with the class period defined as May 25, 2021, through September 24, 2024. (*Id.* ¶¶ 1, 6.) Kang, Jaramillo, and Melchior—each a WM shareholder—now separately move to be appointed lead plaintiff and have their attorneys appointed lead counsel. (Jaramillo Mot.; Kang Mot.; Melchior Mot.) The motions are fully briefed.[3]

### III.   LEGAL STANDARD

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") provides the process for appointing the lead plaintiff in a securities class action. 15 U.S.C.

---

[3] (*See* Mem. ISO Jaramillo Mot. ("Jaramillo Mem."), ECF No. 13; Mem. P. & A. ISO Kang Mot. ("Kang Mem."), ECF No. 17; Mem. P & A. ISO Melchior Mot. ("Melchior Mem."), ECF No. 25; Non-Opp'n Vanderlei Melchior ("Melchior Non-Opp'n"), ECF No. 29; Opp'n Jay Kang ("Kang Opp'n"), ECF No. 36; Opp'n Lawrence M. Jaramillo ("Jaramillo Opp'n"), ECF No. 37; Reply Jay Kang ("Kang Reply"), ECF No. 38; Reply Lawrence M. Jaramillo ("Jaramillo Reply"), ECF No. 39.)

§ 78u-4(a)(3)(B). Any member of the purported class may move to serve as lead plaintiff within 60 days after notice of action is published. *Id.* § 78u-4(a)(3)(A)(i)(II).

The court must appoint as lead plaintiff the member "most capable of adequately representing the interests of class members." *Id.* § 78u-4(a)(3)(B)(i). There is a rebuttable presumption that the "most adequate plaintiff" is the movant who (1) files the complaint or made a motion in response to the notice of action, (2) holds "the largest financial interest in the relief sought by the class," and (3) otherwise satisfies the requirements of Rule 23(a), "in particular those of 'typicality' and 'adequacy.'" *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002); *see* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). A party may rebut the presumption by showing that the presumed most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021).

Once selected, the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).

## IV.   DISCUSSION

All movants timely filed Motions for Appointment within 60 days of the published notice. *See* § 78u-4(a)(3)(A)(i)(II). With timeliness not at issue, the Court must determine which movant has the largest financial interest to be presumed the most adequate plaintiff, whether the movant satisfies the requirements of Rule 23(a), and whether any challenging movant can rebut the presumption.

Because Melchior concedes she does not have the largest financial interest, (Melchior Non-Opp'n 1), the Court **DENIES** Melchior's Motion for Appointment at the outset and considers only Kang's and Jaramillo's Motions.

### A.   Largest Financial Interest

The movant with the largest financial interest is deemed the presumptive lead plaintiff. *Cavanaugh*, 306 F.3d at 730. The PSLRA does not specify how to assess

which movant has the largest financial interest, and the Ninth Circuit has left it to the district courts to "select accounting methods that are both rational and consistently applied" in making this determination. *Id.* at 730 n.4; *see also In re Sonthalia*, No. 22-70044, 2022 WL 3445815, at *1 (9th Cir. Aug. 17, 2022) ("The PSLRA does not provide a specific method for this calculation.").

District courts typically apply the *Olsten-Lax* factors ("*Lax* factors") to determine which movant has the largest financial interest: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class periods; and (4) the approximate losses suffered." *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015); *see Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *3 (N.D. Cal. Apr. 16, 2007) (first quoting *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); and then citing *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)); *see also McGee v. Am. Oriental Bioengineering, Inc.*, No. 2:12-cv-05476-SVW (SHx), 2012 WL 12895668, at *3 (C.D. Cal. Oct. 16, 2012) ("Courts in this District and others within the Ninth Circuit have looked to four factors in making this [lead plaintiff] determination.").

The following chart reflects Kang's and Jaramillo's respective financial interests regarding the *Lax* factors:

| Movant | Total Shares Purchased (Factor #1) | Net Shares Purchased (Factor #2) | Net Funds Expended (Factor #3) | FIFO Approximate Losses (Factor #4) | LIFO Approximate Losses (Factor #4) |
|---|---|---|---|---|---|
| Kang | 90,559 | 73,000 | $334,049.87[4] | $350,571.27 | $286,301.00 |
| Jaramillo | 20,000 | 20,000 | $326,934.00 | $307,026.88 | $307,026.88 |

---

[4] Kang provides $444,793.95 as his net funds expended. (Kang Reply 3, 6.) However, the Court agrees with Jaramillo's assertion that all of Kang's proceeds from selling shares during the class period—including shares acquired prior to the commencement of the class period—should be netted

5

(Decl. Laurence M. Rosen ISO Kang Mot. ("Rosen Decl. ISO Kang Mot.") Ex. 3 ("Kang's Loss Chart"), ECF No. 18-3; Decl. Charles H. Linehan ISO Jaramillo Mot. ("Linehan Decl. ISO Jaramillo Mot.") Ex. C ("Jaramillo's Loss Chart"), ECF No. 14-3.)

### 1. Weighing the Lax Factors

Some courts consider the fourth factor, approximate losses suffered, the "most determinative in identifying the plaintiff with the largest financial [interest]." *Knox*, 136 F. Supp. 3d. at 1163 (quoting *Richardson*, 2007 WL 1129344, at *4) (collecting cases). In the absence of binding case law expressly directing courts to prioritize certain factors, it is inherent in the very definition of factors that their relative weight will vary according to the circumstances of each case. *See City of Evanston v. N. Ill. Gas. Co.*, 381 F. Supp. 3d 941, 952 (N.D. Ill. 2019) (weighing of factors "not mathematical in nature"); *cf. Williams v. Condensed Curriculum Int'l, Inc.*, No. 4:20-cv-05292-YGR, 2020 WL 6700492, at *2 (N.D. Cal. Nov. 13, 2020) (weighing of factors "'best left to the discretion' of the Court" (quoting *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979))). Accordingly, the degree to which the fourth *Lax* factor is given greater weight in comparison to the first three must be determined on a case-by-case basis.

When faced with competing movants whose claimed losses are roughly equal, courts treat those losses as equivalent and look to the other three *Lax* factors to

---

against his expenses during the class period. (*See* Jaramillo Reply 4.); *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-cv-03451-LHK, 2011 WL 566814, at *9 (N.D. Cal. Feb. 15, 2011) ("[Net funds expended] is calculated by looking at the total cash outlays on [the] stock during the Class Period and subtracting any cash receipts during the same period."); *Tenneson v. Nikola Corp.*, No. CV-23-02131-PHX-DJH(DMF), 2024 WL 905244, at *5 n.5 (D. Ariz. Feb. 29, 2024) ("[N]et funds expended equals 'the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period.'") (quoting *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007)).

Using this methodology, Jaramillo argues that $334,078 is Kang's net expenditure. (Jaramillo Reply 4.) The Court finds this amount is miscalculated because subtracting Kang's profits ($110,774.08) from his expenses ($444,793.95) returns a net expenditure amount of $334,049.87. (*See* Kang's Loss Chart.) Accordingly, the Court applies the $334,049.87 amount for Kang's net expenditure.

determine which movant has the largest financial interest. *See, e.g.*, *Westchester Putnam Cntys. Heavy & Hwy. Laborers Loc. 60 Benefit Funds v. Brixmor Prop. Grp.*, No. 16-cv-02400 (AT)(SN), 2016 WL 11648466, at *1–2, (S.D.N.Y. Nov. 29, 2016) (noting a 16% difference in claimed losses and finding in favor of movant with lower claimed losses where other three factors "overwhelmingly favor[ed]" the movant). As "static markers [are] set in stone during the class period," the other three factors—shares purchased, net shares purchased, and funds expended—"provide a more objective assessment of a movant's financial interest than the losses suffered . . . [which] may be subject to future changes in the price per share." *Id.* at *2.

  2.   *Kang's and Jaramillo's Approximate Losses*

The PSLRA limits losses to the difference between the net amount the movant paid for securities during the Class Period and the value of the securities retained through the end of the Class Period, using the ninety-day mean trading price of the security beginning on the day the corrective information is disseminated to the market. 15 U.S.C. § 78u-4(e)(1). On this point, Kang and Jaramillo are not in dispute. (*See* Kang's Loss Chart; Jaramillo's Loss Chart) (both reflecting a 90-day average price of $0.9954).)

Kang and Jaramillo disagree on whether the Court should calculate losses using the First-In-First-Out ("FIFO") or Last-In-First-Out methodology ("LIFO"). (*Compare* Kang Reply 3–5 (favoring FIFO approach), *with* Jaramillo Opp'n 3–4 (favoring LIFO approach).) "Under FIFO, the stocks that were acquired first are assumed to be sold first for loss calculation purposes; under LIFO, the last stocks acquired are assumed to be the first sold." *McGee*, 2012 WL 12895668, at *3. "[U]nlike FIFO, [LIFO] takes into account gains that might have accrued to plaintiffs during the class period due to the inflation of the stock price." *Id.* (internal quotations omitted); *see also Perlmutter*, 2011 WL 566814, at *10.

In this case, the Court need not determine which methodology should be used because Kang's and Jaramillo's losses are roughly equal regardless of whether the Court

uses FIFO or LIFO. Kang's FIFO losses are $350,571.95, whereas Jaramillo's are $307,026.88—a difference of 12.42%. (Kang Reply 6.) Under LIFO, Jaramillo's losses remain $307,026.88, and Kang's decrease to $286,301—an even smaller difference of 7.24%. (*See* Jaramillo Opp'n 4.) Therefore, the Court deems Kang's and Jaramillo's losses to be roughly equal. *See Westchester*, 2016 WL 11648466, at *1–2; *Maeshiro v. Yatsen Holding Ltd.*, No. 22-CV-8165 (JPC) (BCM), 2023 WL 4684106, at *5 (S.D.N.Y. July 21, 2023) ("[W]hen courts rely on Lax/Olsten factors other than the largest financial loss, it is typically because the LIFO losses among competing movants are 'roughly equivalent.'").

Turning to the first three *Lax* factors to determine which movant has the largest financial interest, the Court finds that Kang emerges ahead. Indeed, Kang purchased and retained more than three times the number of shares that Jaramillo did (Kang purchased 90,559 and retained 73,000 shares compared to Jaramillo's 20,000 purchased and retained). Kang also expended more net funds overall ($334,049.87 compared to Jaramillo's $326,934.00). Considering these figures, that Jaramillo leads Kang in LIFO losses by 7.24% is not enough to outweigh Kang's weighty advantage in the first three factors. *See Arias v. Bird Glob., Inc.*, No. 2:22-cv-08406-ODW (AGRx), 2023 WL 3814040 (C.D. Cal. June 2, 2023) (weighing the first three factors when calculation methods proposed by movants resulted in loss differentials ranging from 21% to 1%); *see, e.g.*, *Owens v. FirstEnergy Corp.*, No. 2:20-CV-03785, 2020 WL 6873421, at *9 (S.D. Ohio Nov. 23, 2020) ("[S]everal courts [] choose to consider all four *Olsen-Lax* factors . . . and they typically involve loss differentials of $20,000 or less.") (collecting cases); *see also Westchester*, 2016 WL 11648466, at 2 (finding that a lead plaintiff candidate incurring a $20,884 larger loss did not outweigh the first three factors). Under either proposed approach in a *Lax* factors analysis, Kang emerges as the movant with the greatest financial interest in the case.

### B. Typicality and Adequacy Under Rule 23

Having determined that Kang holds the greatest financial interest between the two competing movants, the Court next considers whether Kang makes a prima facie showing of adequacy and typicality under Rule 23. *See Cavanaugh*, 306 F.3d at 730, 739. "This analysis need not be as complete as would a similar determination for the purpose of class certification." *Knox*, 136 F. Supp. 3d at 1165. At this stage, a lead plaintiff "need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." *Id.*; *see Vignola v. FAT Brands, Inc.*, No. 2:18-cv-07469-PSG (PLAx), 2018 WL 6356109, at *3 (C.D. Cal. Nov. 16, 2018) ("The typicality and adequacy requirements are the main focus, and examination of the remaining requirements is deferred until the lead plaintiff moves for class certification." (cleaned up)).

In the PSLRA context, "[t]he test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Richardson*, 2007 WL 1129344, at *4 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Here, Kang's claims arise from the same conduct as the claims of every other putative class member. Like all class investors, Kang purchased WM securities when the stock prices were artificially inflated because of Defendants' alleged misrepresentations and omissions. (*See* Kang Mem. 1–3.) Accordingly, Kang makes a prima facie showing of typicality. *See Vignola*, 2018 WL 6356109, at *3 (finding typicality satisfied in analogous fraud-on-the-market securities class action).

The adequacy requirement in this context "is met if there are no conflicts between the representative and class interests and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation." *Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1053 (N.D. Cal. 2010) (citing Fed. R. Civ. P. 23(a)(4)); *see also Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (examining whether class

representatives and their counsel have conflicts with other members and will "prosecute the action vigorously"). Here, there is no evidence of any antagonism between Kang's interests and the interests of the proposed class members. (*See* Kang Mem. 7.) Furthermore, Kang's proposed class counsel, The Rosen Law Firm, is a reputable class action firm whose attorneys appear to possess the skills, experience, and resources necessary to prosecute this action. (*See* Rosen Decl. ISO Kang Mot. Ex. 4 ("Rosen Resume"), ECF No. 18-4.) Accordingly, Kang makes a prima facie showing of adequacy.

### C. Rebuttable Presumption

Having made a sufficient prima facie showing of typicality and adequacy under Rule 23, Kang successfully establishes a rebuttable presumption that he is the most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Potential class members can rebut this presumption by providing proof that the presumed lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II); *see Cavanaugh*, 306 F.3d at 730 ("At the third stage, the process turns adversarial and other plaintiffs may present evidence that disputes the lead plaintiff's prima facie showing of typicality and adequacy."). Assertions based on speculation alone will fail to rebut the lead plaintiff presumption. *See Armour v. Network Assoc., Inc.*, 171 F. Supp. 2d. 1044, 1054 (N.D. Cal. 2001) (finding a competing movant's rebuttal arguments failed because they were based on pure speculation).

Under the PSLRA, it is the opposing parties' burden to obtain and present rebuttal evidence; it is not the movant's burden to present evidence to extinguish every suggestion of inadequacy made by an opponent. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Mersho*, 6 F.4th at 901 (reversing district court's appointment of lead plaintiff where court improperly "penaliz[ed]" certain movants by "le[aving] the burden on [them] to prove adequacy at step three even though the burden should have shifted to the

competing movants to show inadequacy").

Bearing this burden, Jaramillo attempts to rebut the presumption by arguing that Kang's methods for calculating his net expenditure and estimated losses are disqualifying. (*See* Jaramillo Reply 3–4.)

In the cases Jaramillo relies upon, the courts found that movants failed to satisfy Rule 23's requirements because of significant errors and discrepancies in the putative lead plaintiff's submissions. *See, e.g.*, *Camp v. Qualcomm, Inc.*, No. 18-cv-1208-AJB-BLM, 2019 WL 277360, at *3–4 (S.D. Cal. Jan. 22, 2019) (finding that significant errors in transaction records and loss calculations, as well as questions surrounding the movant's typicality, disqualified him under Rule 23). In contrast to the cases he cites, Jaramillo's assertion that Kang has made "repeated errors inflating his financial interest," (Jaramillo Reply 4), is based largely upon Kang's use of FIFO, which is a recognized and accepted method for calculating approximate losses suffered, *see, e.g.*, *Query v. Maxim Integrated Prods., Inc.*, 558 F. Supp. 2d 969, 972, 974 (N.D. Cal. 2008).

Moreover, as described above, even after the Court corrects the calculation of Kang's net funds expended from $444,793.95 to $334,049.87, that factor still favors Kang as lead plaintiff. Because this adjustment derives from a difference in the method of calculation used and not from any outright inaccuracy in the figures Kang provided, it is distinguishable from cases in which courts have found movants inadequate due to overt errors in their reported data. *Cf. Micholle v. Ophthotech Corp.*, No. 17-CV-1758 (VSB), 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) ("[T]he prices [the movant] claims to have paid do not fall within the high and low range listed."); *Nager v. Websecure, Inc.*, No. CIV.A. 97-10662-GAO, 1997 WL 773717, at *1 n.1 (D. Mass. Nov. 26, 1997) (finding a movant had reported purchases at $17.50 per share on a day when shares were sold at $9.50 per share). Jaramillo offers no additional evidence or facts to cast doubt on Kang's adequacy and, thus, fails to rebut the presumption. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Accordingly, the presumption stands, and the Court appoints Kang as lead plaintiff in this matter.

**D.   Lead Counsel**

Once a lead plaintiff is selected, that plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).  Kang has selected The Rosen Law Firm to represent him and the class.  Having reviewed the firm's resume, the Court is satisfied that the firm will effectively represent the interests of the class and finds no conflicts in this record.  (*See* Rosen Resume.)  No party has challenged the adequacy of this firm to serve as lead counsel.  Therefore, the Court approves The Rosen Law Firm as lead counsel.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Kang's Motion for Appointment, (ECF No. 16), and **DENIES** Jaramillo's and Melchior's Motions for Appointment, (ECF Nos. 12, 24).

It is hereby **ORDERED** that Jay Kang is designated as lead plaintiff in the action, and that The Rosen Law Firm is designated as lead class counsel, subject to the Court's granting of a Motion for Class Certification.

**IT IS SO ORDERED.**

March 11, 2025

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**