DAVIS POLK & WARDWELL LLP
EDMUND POLUBINSKI (*pro hac vice*)
DANIEL J. SCHWARTZ (*pro hac vice*)
MARIE KILLMOND (*pro hac vice*)
MARY KATE SHERWOOD (*pro hac vice*)
(edmund.polubinski@davispolk.com)
(daniel.schwartz@davispolk.com)
(marie.killmond@davispolk.com)
(mary.sherwood@davispolk.com)
450 Lexington Ave.
New York, New York 10017
Telephone: +1 212 450 4000
Facsimile: +1 212 450 5000

MANDAVIA EPHRAIM & BURG LLP
ANJANI MANDAVIA (SBN 94092)
(amandavia@mandaviallp.com)
1801 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone: +1 310 556 9694

*Attorneys for Scott Gordon,*
*William Healy, and Gregory Gentile*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERET ISHAK, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WM TECHNOLOGY, INC. f/k/a SILVER SPIKE ACQUISITION CORP., CHRISTOPHER BEALS, ARDEN LEE, DOUGLAS FRANCIS, SUSAN ECHERD, MARY HOITT, SCOTT GORDON, WILLIAM HEALY, and GREGORY M. GENTILE<br><br>Defendants. | Case No. 2:24-cv-08959-ODW-PVC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE SILVER SPIKE INDIVIDUALS' MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**<br><br>Date:      October 27, 2025<br>Time:      1:30 p.m.<br>Dept:      Courtroom 5D, 5th Fl.<br>Judge:     Hon. Otis D. Wright, II |

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................5

FACTUAL BACKGROUND..........................................................................7

ARGUMENT.................................................................................................9

    I.    Plaintiffs' Section 20(a) Claim Should Be Dismissed Because They Fail to Plead a Primary Violation ..................................................9

    II.   Plaintiffs' Section 20(a) Claim Should Be Dismissed Because They Fail to Plausibly Plead the Silver Spike Individuals' Control.................................................................................................9

CONCLUSION.............................................................................................13

**TABLE OF AUTHORITIES**

CASES

PAGE(S)

*Abdo v. Fitzsimmons*,
    2017 WL 6994539 (N.D. Cal. Nov. 3, 2017) ..................................................... 12

*Arthur Child.'s Tr. v. Keim*,
    994 F.2d 1390 (9th Cir. 1993) ........................................................................ 10

*Batwin v. Occam Networks, Inc.*,
    2008 WL 2676364 (C.D. Cal. July 1, 2008) .................................................... 10

*In re Cooper Sec. Litig.*,
    691 F. Supp. 2d 1105 (C.D. Cal. 2010) ........................................................... 12

*In re Digital Island Sec. Litig.*,
    223 F. Supp. 2d 546 (D. Del. 2002) ................................................................. 12

*E. Ohman J:or Fonder AB v. NVIDIA Corp.*,
    81 F.4th 918 (9th Cir. 2023) ......................................................................... 9,10

*In re Hansen Nat. Corp. Sec. Litig.*,
    527 F. Supp. 2d 1142 (C.D. Cal. 2007) ........................................................... 12

*Howard v. Everex Sys., Inc.*,
    228 F.3d 1057 (9th Cir. 2000) ........................................................................ 12

*Nguyen v. Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020) ............................................................................ 9

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
    96 F.3d 1151 (9th Cir. 1996) .......................................................................... 11

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
    2000 WL 1727405 (N.D. Cal. Sept. 29, 2000) ................................................ 10

*Sprewell v. Golden State Warriors*,
    266 F.3d 979, 988 (9th Cir. 2001) ..................................................................... 7

*In re Stable Rd. Acquisition Corp. Sec. Litig.*,
    2022 WL 2762213 (C.D. Cal. July 13, 2022) .................................................. 11

*Vicari v. Voyager Fin. Grp., LLC*,
    2013 WL 12136519 (C.D. Cal. Sept. 17, 2013) ...........................................9, 10, 11, 12

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.,*
258 F. Supp. 3d 1037 (N.D. Cal. 2017) ............................................................. 10

STATUTES

15 U.S.C. § 78j .................................................................................................. 5, 9

15 U.S.C. § 78t. ................................................................................................. 5, 9

RULES

Fed. R. Civ. P. 8 .................................................................................................... 9

Fed. R. Civ. P. 9 .................................................................................................... 9

17 C.F.R. 240.10b-5 ......................................................................................... 5, 9

**MEM. ISO MOTION TO DISMISS**
**2:24-CV-08959-ODW-PVC**

Defendants Scott Gordon, William Healy, and Gregory Gentile (together, the "Silver Spike Individuals") join in all respects the Memorandum of Points and Authorities filed by WM Technology, Inc. ("WM"), Christopher Beals, and Arden Lee (together with WM, the "WM Defendants") in support of their Motion to Dismiss the Amended Complaint ("AC") (Dkt. 48).  The AC should be dismissed in its entirety for the reasons set forth in that brief (Dkt. 66) (the "WM Defendants' Brief").

The Silver Spike Individuals respectfully submit this separate Memorandum of Points and Authorities to emphasize that even if the AC had stated a claim against the WM Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 thereunder—which it does not—it still would fail to allege facts sufficient to plausibly support the sole claim asserted against the Silver Spike Individuals for control person liability under Section 20(a) of the Exchange Act.[1]

## **PRELIMINARY STATEMENT**

The AC contends that before and after WM became a public company, it allegedly misrepresented its "monthly average users" ("MAU")—i.e., the number of individuals who opened or otherwise accessed its website during the last month in each quarter.  As demonstrated in the WM Defendants' Motion to Dismiss, the AC is untimely and further fails to allege that there was anything false or misleading about the MAU disclosures, let alone that they were made with scienter or that they caused the alleged losses.

But even if the AC had pled a claim against WM (which it has not), the MAU disclosures have nothing whatsoever to do with the Silver Spike Individuals.  MAU was a measurement disclosed by *WM* that related to *WM's* business.  It is not

---

[1] Unless otherwise noted, all emphasis herein is added and all internal citations and quotation marks are omitted.  References to Ex. [X] refer to the exhibits to the Declaration of Edmund Polubinski, filed herewith, and references to AC Ex. [X] refer to the exhibits to Plaintiffs' Amended Complaint.

alleged to have had any relationship to or bearing on the business of the pre-merger *Silver Spike*—a special-purpose acquisition company ("SPAC") that existed solely to complete a transaction and that ultimately purchased and merged with WM. The Silver Spike Individuals were officers of the SPAC—*not* pre- or post-merger WM. The AC does not allege that any of the Silver Spike Individuals made, reviewed, approved, or were consulted about MAU disclosures in any securities filing. Nor does the AC allege that they knew anything about how MAU was calculated beyond what WM told the market and potential investors generally. Most critically, the AC does not allege any facts that could plausibly suggest that the Silver Spike Individuals had any ability to control WM's disclosures of MAU or set the policies for how WM collected, measured, or disclosed MAU. Rather, the AC and the documents it incorporates by reference support exactly the opposite inference: that the Silver Spike Individuals had nothing to do with and certainly did not control WM's statements about MAU.

The AC's allegations thus fall well short of what is required to plead a control person claim under Section 20(a). The AC seeks to hold the Silver Spike Individuals liable solely by virtue of positions they once held at the SPAC and their signatures on public filings that allegedly—unbeknownst to them—reported false or misleading MAU data regarding WM's business. Plaintiffs allege virtually nothing about the Silver Spike Individuals. Instead, their claims rely overwhelmingly on rote, boilerplate control allegations that do not suffice to meet the pleading burden. For these reasons and those set forth in the WM Defendants' Motion, the control person claims against the Silver Spike Individuals should be dismissed with prejudice.

## **FACTUAL BACKGROUND**[2]

WM "runs a website called weedmaps.com and related mobile applications that allow consumers to find legal cannabis dispensaries." AC ¶ 2.  It also generates revenue by offering a "suite of subscription-based software tools." *Id.* ¶ 25.  It formerly was a private company known as WM Holding Company, LLC ("WM Holding"). *Id.* ¶ 13.  As explained in greater detail in the WM Defendants' Brief, WM reported data regarding its MAU. *Id.* ¶ 26.  Plaintiff alleges that the reported MAU was false or misleading because it allegedly included site visits resulting from pop-under advertisements. *Id.* ¶¶ 2, 3, 28.

The AC does not allege that the Silver Spike Individuals ever had any involvement with WM Holding.  Instead, they were officers of a SPAC called Silver Spike Acquisition Corp. ("Silver Spike"). *Id.* ¶¶ 17-19.  The AC does not contain any allegations about Silver Spike prior to its June 2021 merger with WM other than that it *was* a SPAC. *Id.* ¶¶ 13, 25.  As a SPAC, Silver Spike had no business of its own; rather, it conducted an IPO in August 2019 to raise money with the express goal of *later* identifying a business to acquire. *See* Ex. 1 (5/26/21 Proxy) at 126.  Silver Spike and WM Holding agreed to merge on December 10, 2020. *Id*. at 130.  Thereafter, Silver Spike filed with the SEC a Registration Statement on May 25, 2021, and a Proxy Statement seeking shareholder approval of the merger on May 26, 2021.  AC ¶ 35.  After the merger closed on June 16, 2021, both companies ceased to exist and the combined company, WM, replaced them. *Id.* ¶¶ 13-14.

Messrs. Gordon, Healy, and Gentile were officers of Silver Spike—not WM Holding—prior to the May 2021 filing of the Registration Statement and Proxy. *Id.* ¶¶ 17-19.  All signed the Registration Statement as Silver Spike officers, and Mr.

---

[2] Solely for this motion, well-pled factual allegations in the AC are presumed true, but conclusory allegations, legal conclusions, or allegations contradicted by documents appended to or incorporated by reference in the AC or subject to judicial notice are not. *See, e.g.*, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001).

**MEM. ISO MOTION TO DISMISS**
**2:24-CV-08959-ODW-PVC**

Gordon, as Silver Spike's CEO, also signed the Proxy. *Id.* ¶¶ 35-36. But none had any alleged involvement in the management or operations of pre-merger WM Holding—neither with respect to the collection and computation of the MAU data disclosed in the Proxy and Registration Statement nor otherwise. And, immediately after the Merger, "no person affiliated with Silver Spike"—including the Silver Spike Individuals—served as a WM officer. *See* Ex. 3 (6/2/2021 8-K) at 4; *see also* AC ¶¶ 17-19. Messrs. Healy and Gentile ceased to be officers of Silver Spike upon completion of the merger; they are not alleged to ever have held any position at WM. AC ¶¶ 18-19. Mr. Gordon served on post-merger WM's Board of Directors, *id.* ¶ 17, but the AC does not allege that he ever had any role in WM's management or operations.

Years after the merger, in September 2024, the SEC entered into a consensual Cease and Desist Order with WM (the "SEC Order"). *Id.* ¶¶ 28-34. The SEC Order alleges that from May 2021 until August 2022, WM's reported MAU included users directed to its site via pop-under advertisements. *Id.; see also* AC Ex. 1 (SEC Order) at 2. The AC alleges this rendered the MAU disclosures false or misleading. *See, e.g.*, AC ¶ 38.

The Silver Spike Individuals are not mentioned in the SEC Order (or the accompanying SEC complaint against Mr. Beals and Mr. Lee (the "SEC Complaint")), nor do Plaintiffs' descriptions of the SEC Order or the SEC Complaint mention them. *Id.* ¶¶ 28-34; *see generally* AC Ex. 1 (SEC Order), AC Ex. 2 (SEC Complaint). With the exception of the Registration Statement and Proxy, the statements that the SEC challenged (and that Plaintiffs challenge in the AC) were made *after* the merger, once the Silver Spike Individuals had ceased to be officers. *See* AC Ex. 1 (SEC Order) ¶¶ 7-20; AC Ex. 2 (SEC Complaint) ¶¶ 17-61; *id.* ¶¶ 35-86. While the Registration Statement and Proxy included certain MAU data, *see* Ex. 2 (5/25/21 Registration Statement) at 222-23; Ex. 1 (5/26/21 Proxy) at 222-23; AC ¶¶ 35-37, the SEC Order makes crystal clear that this information "was

**MEM. ISO MOTION TO DISMISS**
**2:24-CV-08959-ODW-PVC**

provided to the SPAC by WM Technology," then WM Holding, AC Ex. 1 (SEC Order) ¶ 7.

## **ARGUMENT**

Plaintiffs' allegations do not satisfy any element of a Section 20(a) claim. "Section 20(a) requires [a] plaintiff to allege (1) a primary violation of federal securities law; and (2) that defendant exercised actual power or control over the primary violator." *E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918, 946 (9th Cir. 2023), *cert. granted sub nom. NVIDIA Corp. v. Ohman J*, 144 S. Ct. 2655 (2024), *and cert. dismissed as improvidently granted*, 604 U.S. 20 (2024). "Control" in this context means "a significant degree of day-to-day operational control, amounting to the power to dictate another party's conduct or operations." *Vicari v. Voyager Fin. Grp.*, *LLC*, 2013 WL 12136519, at \*5 (C.D. Cal. Sept. 17, 2013). Plaintiffs must identify "each individual defendant's respective role" and "how those roles gave them control over" an alleged primary violator; boilerplate allegations are insufficient. *Id.*[3]

### I.    Plaintiffs' Section 20(a) Claim Should Be Dismissed Because They Fail to Plead a Primary Violation

As set forth in the WM Defendants' Brief, which the Silver Spike Individuals join, Plaintiffs have failed to plead a primary violation of Section 10(b) or Rule 10b-5 against any defendant. For this reason alone, Plaintiffs' Section 20(a) claims against the Silver Spike Individuals "necessarily fail." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 419 (9th Cir. 2020).

### II.    Plaintiffs' Section 20(a) Claim Should Be Dismissed Because They Fail to Plausibly Plead the Silver Spike Individuals' Control

Even if Plaintiffs had pled a primary violation, their Section 20(a) claim

---

[3]  Although it remains an open issue whether Fed. R. Civ. P. 8(a) or Rule 9(b) applies to control person claims, the pleading here fails even under Rule 8(a). It would be particularly deficient, though, under a Rule 9(b) standard, since it wholly fails to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Instead, as discussed *infra*, Plaintiff's allegations are group-pled against all "Individual Defendants." *See, e.g.*, AC ¶¶ 20-21.

**MEM. ISO MOTION TO DISMISS**
**2:24-CV-08959-ODW-PVC**

would still fail because they do not adequately allege that the Silver Spike Individuals exercised "actual power or control" over any alleged primary violator. *NVIDIA Corp.*, 81 F.4th at 946.  The AC's *only* factual allegations about the Silver Spike Individuals are (i) the positions they held at the SPAC, (ii) that Messrs. Healey and Gentile had no further connection to the SPAC or WM after the 2021 merger, (iii) that Mr. Gordon served as an outside director of post-merger WM through the end of the putative class period but never held a management position in that entity, and (iv) that they signed the Registration Statement (and, in Mr. Gordon's case, the Proxy) in their SPAC officer capacities.  AC ¶¶ 17-19, 35-36. None of this suffices to allege "day-to-day operational control" over WM, Mr. Beals or Mr. Lee, or the "the power to dictate" any aspect of WM's "conduct or operations"—let alone how WM collected, computed, or disclosed MAU.  *See Vicari*, 2013 WL 12136519, at *5.  Mere allegations that "defendants are directors, who served on [a board] [c]ommittee, and who signed [the defendant company's] SEC filings . . . do not offer any indication that these defendants were involved in the day-to-day affairs" of the company and therefore "do not present a basis for control liability."  *Batwin v. Occam Networks, Inc.*, 2008 WL 2676364, at *25 (C.D. Cal. July 1, 2008) (citing *Arthur Child.'s Trust v. Keim*, 994 F.2d 1390, 1396 (9th Cir. 1993) ("A director is not automatically liable as a controlling person.")); *see also In re Splash Tech. Holdings, Inc. Sec. Litig.*, 2000 WL 1727405, at *16 (N.D. Cal. Sept. 29, 2000) (dismissing Section 20(a) claim because "general allegations" that director signed SEC filings "d[id] not constitute particular evidence of control").[4]

Alone or together, Plaintiffs' purported control allegations fail.  As another

---

[4] *See also NVIDIA Corp.*, 81 F.4th at 946 (dismissing Section 20(a) claims against two officer defendants where plaintiff did not allege their "actual power or control" over CEO); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 258 F. Supp. 3d 1037, 1048-49 (N.D. Cal. 2017) (dismissing Section 20(a) claims where only allegations of control were defendant's "execution of the Second and Third Quarter 2015 Interim Reports").

MEM. ISO MOTION TO DISMISS
2:24-CV-08959-ODW-PVC

court in this district recently held, mere allegations that SPAC officers signed the registration statement and that they had controlling authority "by reason of their positions," stock ownership, and "access to press releases and public filings" did not sufficiently plead that they "exercised the requisite control for a Section 20(a) claim." *In re Stable Rd. Acquisition Corp. Sec. Litig.*, 2022 WL 2762213, at *5, 12 (C.D. Cal. July 13, 2022).  More detailed allegations are equally absent here, as are any allegations suggesting that any Silver Spike Individual "exercised a significant degree of day-to-day operational control" over WM, as required.  *Vicari*, 2013 WL 12136519, at *5; *see also Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1162 (9th Cir. 1996) (control requires input on "management and policies of the corporation").

Here, Plaintiffs' allegations are not merely implausible, they are directly inconsistent with the AC itself, which confirms that the Silver Spike Individuals did *not* exercise the required control over MAU disclosures.  Indeed, it affirmatively alleges the opposite: that the "information regarding WM Technology's business, including its MAU metric" that was included in the Proxy and Registration Statement "*was provided to the SPAC by WM Technology.*"  AC Ex. 1 (SEC Order) ¶ 7; *see also* AC ¶ 36 (alleging that Messrs. Beals and Lee "participated in providing the information about Legacy WM's business to the SPAC for its Registration Statement and Proxy").[5]  This is fatal to Plaintiffs' claims against all three Silver Spike Individuals.  Any suggestion, moreover, that Messrs. Healy and Gentile could have exercised control over WM at any point *after* the merger is negated by the AC's allegation that they remained at Silver Spike only "until the merger with Legacy WM."  AC ¶¶ 18-19.  Individuals who have no role at a

---

[5] The SEC Order and Complaint allege the same.  *See* AC Ex. 1(SEC Order) ¶ 7; *id.* Ex. 2 (SEC Complaint) ¶ 20.  The Proxy and Registration Statement themselves are also clear that the MAU-related information came from WM Holding.  *See* Ex. 2 (5/25/21 Registration Statement) at 218, 222-23 (providing MAU information in section titled "Management's Discussion and Analysis of Financial Condition and Results of Operations of WMH," which contains information expressly provided by WM Holding); Ex. 1 (5/26/21 Proxy) at 218, 222-23 (same).

company cannot exercise control over it.  *See, e.g.*, *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1067 (9th Cir. 2000) (no control person liability for defendant who was director for less than three months of class period); *In re Cooper Sec. Litig.*, 691 F. Supp. 2d 1105, 1122 (C.D. Cal. 2010) (no control person liability where defendant was officer of primary violator's subsidiary).

Missing from the AC are factual allegations that *any* Silver Spike Individual took *any* specific action with respect to WM's MAU disclosures.  Instead, Plaintiffs offer a litany of formulaic allegations supposedly applicable to "each Individual Defendant"—a category encompassing not only the Silver Spike Individuals but also WM management (Mr. Beals and Mr. Lee).  AC ¶¶ 20-21.  Plaintiffs recite, among other things, that each Individual Defendant "directly participated in the management of the Company," "was directly involved in the day-to-day operations of the Company at the highest levels," and "was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein."  *Id.* ¶ 21; *see also id*. ¶¶ 122, 147-52. These boilerplate allegations are, however, legally insufficient to plead control. *See, e.g.*, *Vicari,* 2013 WL 12136519, at *5 (rejecting as "conclusory" allegations that "fail to identify . . . each individual defendant's respective role" and "how those roles gave them control"); *cf. In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 561 (D. Del. 2002), *aff'd*, 357 F.3d 322 (3d Cir. 2004) (dismissing control person claim where allegations of control were group-pled as to all director defendants).[6] And they are even more obviously insufficient here as to the Silver Spike Individuals, given that they directly contradict other more specific information in the AC and the documents incorporated therein by reference, which make clear that

_____

[6] *See also, e.g., In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1163 (C.D. Cal. 2007) (rejecting allegations that defendants possessed control "[b]y virtue of their high-level positions, and . . . participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements"); *Abdo v. Fitzsimmons*, 2017 WL 6994539, at *21 (N.D. Cal. Nov. 3, 2017) (finding Section 20(a) allegations "problematic" where they relied on defined term "Defendants" that included individual who was not director or officer).

**MEM. ISO MOTION TO DISMISS**
**2:24-CV-08959-ODW-PVC**

the Silver Spike Individuals never played *any* management role with regard to WM Holdings or WM or otherwise had any involvement in how WM collected, measured, or disclosed MAU.

## CONCLUSION

For the foregoing reasons, the Silver Spike Individuals respectfully request that the Court dismiss all claims against them with prejudice.

Dated: July 11, 2025

By: */s/ Edmund Polubinski*
Edmund Polubinski

DAVIS POLK & WARDWELL LLP
EDMUND POLUBINSKI (*pro hac vice*)
DANIEL J. SCHWARTZ (*pro hac vice*)
MARIE KILLMOND (*pro hac vice*)
MARY KATE SHERWOOD (*pro hac vice*)
(edmund.polubinski@davispolk.com)
(daniel.schwartz@davispolk.com)
(marie.killmond@davispolk.com)
(mary.sherwood@davispolk.com)
450 Lexington Ave.
New York, New York 10017
Telephone: +1 212 450 4000
Facsimile: +1 212 450 5000

MANDAVIA EPHRAIM & BURG LLP
ANJANI MANDAVIA (SBN 94092)
(amandavia@mandaviallp.com)
1801 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone: +1 310 556 9694

*Attorneys for Scott Gordon, William Healy, and Gregory Gentile*

MEM. ISO MOTION TO DISMISS
2:24-CV-08959-ODW-PVC

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Scott Gordon, William Healy, and Gregory Gentile, certifies that this brief contains 2,873 words, which:

    <u>X</u>  complies with the word limit of L.R. 11-6.1

    ___  complies with the word limit set by Court order.

Dated: July 11, 2025

By: */s/ Edmund Polubinski*
Edmund Polubinski

DAVIS POLK & WARDWELL LLP
EDMUND POLUBINSKI (*pro hac vice*)
DANIEL J. SCHWARTZ (*pro hac vice*)
MARIE KILLMOND (*pro hac vice*)
MARY KATE SHERWOOD (*pro hac vice*)
(edmund.polubinski@davispolk.com)
(daniel.schwartz@davispolk.com)
(marie.killmond@davispolk.com)
(mary.sherwood@davispolk.com)
450 Lexington Ave.
New York, New York 10017
Telephone: +1 212 450 4000
Facsimile: +1 212 450 5000

MANDAVIA EPHRAIM & BURG LLP
ANJANI MANDAVIA (SBN 94092)
(amandavia@mandaviallp.com)
1801 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone: +1 310 556 9694

*Attorneys for Scott Gordon,*
*William Healy, and Gregory Gentile*