COOLEY LLP
SARAH M. LIGHTDALE (*pro hac vice*)
(slightdale@cooley.com)
55 Hudson Yards
New York, New York 10001
Telephone: +1 212 479 6000
Facsimile: +1 212 479 5275

ALEXANDRA R. MAYHUGH (300446)
(amayhugh@cooley.com)
MAXIMILIAN SLADEK DE LA CAL (324961)
(msladekdelacal@cooley.com)
NICHOLAS R. ORR (334142)
(norr@cooley.com)
355 S. Grand Avenue, Suite 900
Los Angeles, California 90071
Telephone: +1 213 561 3250
Facsimile: +1 213 561 3244

HEATHER M. SPEERS (305380)
(hspeers@cooley.com)
LINH K. NGUYEN (305737)
(lknguyen@cooley.com
10265 Science Center Drive
San Diego, California 92121
Telephone: +1 858 550 6000
Facsimile: +1 858 550 6420

*Attorneys for Defendants WM Technology, Inc.,
Christopher Beals, and Arden Lee*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERET ISHAK, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> WM TECHNOLOGY, INC. f/k/a SILVER SPIKE ACQUISITION CORP., CHRISTOPHER BEALS, ARDEN LEE, SCOTT GORDON, WILLIAM HEALY, and GREGORY M. GENTILE <br><br> Defendants. | Case No. 2:24-cv-08959-ODW-PVC <br><br> **REPLY IN SUPPORT OF WM TECHNOLOGY DEFENDANTS' MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT** <br><br> Date: November 10, 2025 <br> Time: 1:30 p.m. <br> Dept: Courtroom 5D, 5th Fl. <br> Judge: Hon. Otis D. Wright, II |

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................... 1

II.    ARGUMENT ............................................................................................................ 1

    A.    Plaintiffs' Claims Are Time-Barred. ....................................................... 1

    B.    Plaintiffs Fail to Plead a Strong Inference of Scienter. ......................... 2

    C.    Plaintiffs Fail to Plead Falsity. ............................................................... 6

    D.    Plaintiffs Fail to Plead Loss Causation. ............................................... 10

    E.    Plaintiffs Abandoned Their Scheme Claim. ......................................... 11

III.   CONCLUSION ...................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AnaptysBio, Inc.*,
2021 WL 4267413 (S.D. Cal. Sep. 20, 2021) ........................................................9

*Aramic LLC v. Revance Therapeutics, Inc.*,
2024 WL 1354503 (N.D. Cal. April 2, 2024) .......................................................5

*In re Cloudera, Inc.*,
121 F.4th 1180 (9th Cir. 2024) ...........................................................................6

*Daniels Fam. 2001 Revocable Tr. v. Las Vegas Sands Corp.*,
709 F. Supp. 3d 1217 (D. Nev. 2024) ................................................................10

*Epstein v. World Acceptance Corp.*,
203 F. Supp. 3d 655 (D.S.C. 2016) ...................................................................10

*Espy v. J2 Glob., Inc.*,
99 F.4th 527 (9th Cir. 2024) .............................................................................10

*Farhar v. Ontrak, Inc.*,
714 F. Supp. 3d 1198 (C.D. Cal. 2024) .............................................................6

*Flynn v. Sientra, Inc.*,
2016 WL 3360676 (C.D. Cal. June 9, 2016) .......................................................8

*Glazer Cap. Mgmt. v. Magistri*,
549 F.3d 736 (9th Cir. 2008) .............................................................................3

*Hollingsworth v. Nextdoor Holdings, Inc.*,
2025 WL 1433820 (N.D. Cal. May 19, 2025) ...................................................11

*Ikeda v. Baidu, Inc.*,
2021 WL 1299046 (N.D. Cal. Apr. 7, 2021) .......................................................6

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014) ............................................................................10

*Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*,
39 F.4th 1092 (9th Cir. 2022) ..........................................................................10

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re Maiden Holdings, Ltd. Sec. Litig.*,
  2025 WL 2406864 (3d Cir. Aug. 20, 2025)........................................................................9

*Mauss v. NuVasive, Inc.*,
  2016 WL 3681831 (S.D. Cal. July 12, 2016).....................................................................10

*Nursing Home Pension Fund v. Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004)...........................................................................................5

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015) ..........................................................................................................9

*In re PDI Sec. Litig.*,
  2005 WL 2009892 (D.N.J. Aug. 17, 2005)........................................................................5

*Petrie v. Elec. Game Card Inc.*,
  2011 WL 165402 (C.D. Cal. Jan. 12, 2011).......................................................................4

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017)............................................................................................5

*Ryan v. FIGS, Inc.*,
  2024 WL 187001 (C.D. Cal. Jan. 17, 2024).......................................................................4

*Scheller v. Nutanix, Inc.*,
  450 F. Supp. 3d 1024 (N.D. Cal. 2020)..............................................................................8

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
  2019 WL 2491935 (N.D. Cal. June 14, 2019) ....................................................................3

*Shenwick v. Twitter, Inc.*,
  282 F. Supp. 3d 1115 (N.D. Cal. 2017)...........................................................................6, 7

*In re Silicon Graphics Inc. Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999)...........................................................................................4, 5

*Sneed v. Talphera, Inc.*,
  147 F.4th 1123 (9th Cir. 2025)...........................................................................................3

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
  802 F.Supp.2d 1125 (C.D. Cal. 2011)..............................................................................2, 3

COOLEY LLP
ATTORNEYS AT LAW

iii

**WM TECH DEFS'**
**REPLY ISO MOTION TO DISMISS**
**2:24-CV-08959-ODW-PVC**

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Twitter, Inc. Sec. Litig.*,
    506 F. Supp. 3d 867 (N.D. Cal. 2020)..................................................................9

*In re UTStarcom, Inc. Sec. Litig.*,
    617 F. Supp. 2d 964 (N.D. Cal. 2009).................................................................5

*In re Vantive Corp. Sec. Litig.*,
    283 F.3d 1079 (9th Cir. 2002)...........................................................................4

*In re VeriFone Holdings, Inc. Sec. Litig.*,
    704 F.3d 694 (9th Cir. 2012).............................................................................4

*In re Volkswagen "Clean Diesel" Mktg., Sales Prac., & Prod. Liab. Litig.*,
    2017 WL 66281 (N.D. Cal. Jan. 4, 2017) .........................................................5

*In re Wet Seal Inc. Sec. Litig.*,
    518 F. Supp. 2d 1148 (C.D. Cal. 2007).............................................................4

*York Cnty. v. HP, Inc.*,
    65 F.4th 459 (9th Cir. 2023).........................................................................2, 4

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009).............................................................................3

**Other Authorities**

15 U.S.C. §78u-4 ..................................................................................................2, 3

Fed. R. Civ. P. 9(b) ...............................................................................................10

## I.      INTRODUCTION

Plaintiffs' Opposition does not alter the conclusion that there are multiple bases for dismissal. ***First***, Plaintiffs' claims are time-barred. They hinge on information publicly reported over two years before this lawsuit—namely, that MAU was historically driven by paid advertisements called "pop-unders" that directed users to the platform but resulted in many users closing the site without clicking any links. Defendants' later settlement with the SEC contained no new revelation and cannot revive time-barred claims. ***Second***, Plaintiffs plead no facts that Defendants intended to deceive investors or were deliberately reckless. To the contrary, after WM self-reported, the SEC conducted an investigation and charged Defendants with negligence. Plaintiffs cannot meet their pleading burden by making conclusory assertions that those same negligence-based allegations equate to fraud. ***Third***, none of the challenged statements were false or misleading as a matter of law. ***Finally***, Plaintiffs fail to plead loss causation as to two of the three alleged corrective disclosures. Because none of these shortcomings can be cured, the AC should be dismissed with prejudice.

## II.      ARGUMENT

### A.      Plaintiffs' Claims Are Time-Barred.

Plaintiffs do not dispute the statute of limitations is two years from when "a reasonably diligent plaintiff would have discovered the facts constituting the violation." Mot. 7; Opp. 8.[1] Nor do they dispute that on August 9, 2022—over two years before Plaintiffs filed this lawsuit—WM disclosed MAUs were "driven by the purchase of pop-under advertisements" and the "vast majority" of such users "close the site without clicking on any links." Mot. 8.

Against these facts, Plaintiffs' only argument is that the September 2024 SEC settlement revealed "what Defendants Beals and Lee knew and when they knew it."

---

[1] "Mot." refers to ECF No. 75-1; "Opp." refers to ECF No. 84; abbreviations are otherwise the same as in ECF No. 75-1.

Opp. 9. Presumably, Plaintiffs are referring to the allegation that Beals and Lee received "various weekly updates" on user metrics. ¶¶100, 104. But WM had already disclosed Beals' and Lee's knowledge of internal data on pop-under traffic and user engagement in August 2022. Mot. 9; Ex. N at 400-01. That same disclosure revealed management's historical awareness of pop-under traffic. Ex. N. at 401 (explaining management used "pop-under advertisements" as "a cost-effective means of promoting awareness of the [platform]"). That the SEC's later allegation may have offered additional details on the ***delivery*** of that information to Beals and Lee (*i.e.*, through weekly updates) is not a "fundamentally new revelation" sufficient to revive Plaintiffs' time-barred claims. *Stichting Pensioenfonds v. Countrywide Fin.*, 802 F.Supp.2d 1125, 1139 (C.D. Cal. 2011).

The detail disclosed about pop-under traffic makes this case more akin to *Countrywide*—which Plaintiffs ignore altogether (Mot. 8, 10)—than *York County*, where ***no*** information about the alleged misstatements was available prior to SEC enforcement proceedings. The only "statements preceding the critical date" in *York County* were "innocuous" and "standard assurances to shareholders." *York Cnty. v. HP*, 65 F.4th 459, 467 (9th Cir. 2023). Here, in contrast, years before this lawsuit began, WM disclosed the exact facts on which Plaintiffs base their claims as well as management's contemporaneous awareness of those facts. Ex. N at 400-01. As in *Countrywide*, "[t]he SEC complaint may perhaps include more detail…but it does not contain any fundamentally new revelation." 802 F.Supp.2d at 1139. Plaintiffs' claims are time-barred, and the AC should be dismissed with prejudice for this reason alone.

### B.    Plaintiffs Fail to Plead a Strong Inference of Scienter.

Another independent basis for dismissal is Plaintiffs' failure to plead scienter. The PSLRA demands particularized facts giving rise to a "***strong inference***" that Defendants intended to deceive, manipulate, or defraud. 15 U.S.C. §78u-4.

Plaintiffs "face a substantial hurdle in establishing scienter" because they concede there was no motive for Defendants to lie about MAU. Mot. 10-11. Plus, they have abandoned any argument they can establish scienter through a core operations inference. *Cf.* ¶¶102, 106; Mot. 11-12; *see Countrywide,* 802 F.Supp.2d at 1132 ("[F]ailure to respond in an opposition…to an argument…constitutes waiver or abandonment"). What remains—the SEC allegations and Beals' resignation—does not meet the PSLRA's heightened pleading requirements. Mot. 12-15.

After weighing the "malicious and innocent inferences cognizable from the facts pled," *Zucco Partners v. Digimarc*, 552 F.3d 981, 991 (9th Cir. 2009), the more compelling inference is Defendants were, at most, negligent in overseeing public disclosures concerning the components and drivers of MAU. *See Sneed v. Talphera*, 147 F.4th 1123, 1134 (9th Cir. 2025) ("Showing scienter necessarily becomes harder when the allegedly misleading statements are not flagrantly false because in those cases an innocent alternative explanation becomes more likely."). This is the same conclusion the SEC reached after its investigation. And it is consistent with Defendants' contemporaneous actions—after receiving an internal complaint about MAU, Defendants promptly investigated, voluntarily reported to the SEC, and disclosed the issue to the public. Mot. 15.[2]

### 1.    The SEC allegations are insufficient to plead scienter.

Plaintiffs' reliance on the SEC allegations to argue "Defendants had access to information contradicting their public statements" (Opp. 16) is insufficient.

*First*, the SEC alleged that Beals' and Lee's receipt of internal reports showed a failure to exercise reasonable care—not an intent to defraud. Mot. 14. Negligence-based charges do not meet the heightened pleading requirements under the PSLRA.

---

[2] Plaintiffs cite no authority for the argument that Defendants' investigation and self-reporting are *less* exculpatory because an employee reported to the Board rather than management. Opp. 19. To the contrary, internal investigations militate against scienter—for both company and executive defendants—even where Boards conduct the investigations. *SEB Inv. v. Symantec*, 2019 WL 2491935, at *2, 10 (N.D. Cal. June 14, 2019).

*Glazer Cap. Mgmt. v. Magistri*, 549 F.3d 736, 748-49 (9th Cir. 2008) (allegations based on DOJ and SEC settlement insufficient).

None of Plaintiffs' caselaw holds otherwise. Opp. 18. In *In re VeriFone Holdings Securities Litigation*, the court "viewed [the allegations] holistically," finding a strong inference of scienter based on allegations **outside** the SEC complaint. 704 F.3d 694, 708-10 (9th Cir. 2012). And *York County* expressly did **not** address "the adequacy of [the] complaint," and thus did not decide whether scienter was sufficiently pled. 65 F.4th at 468.

**Second**, Plaintiffs fail to plead corroborating details to support a strong inference of scienter. Mot. 13-14. They claim Beals and Lee received weekly reports indicating "low quality" pop-under traffic was becoming a larger portion of MAU. ¶¶100, 104. But Plaintiffs identify no corroborating allegations concerning the reliability (or not) of those reports. Mot. 13. Moreover, Plaintiffs offer no basis to infer Beals and Lee were scrutinizing the data in those reports, which concerned an aspect of the business that did not generate revenue. Mot. 13. Plaintiffs' response—that characterizing MAU as a "marketing metric" somehow "confirms" fraud (Opp. 16)—is perplexing and, in any event, appears nowhere in the AC.

Plaintiffs attempt to bolster their deficient allegations by claiming that the internal reports Beals and Lee received showed "98% of pop-under traffic resulted in no engagement." Opp. 17. The SEC, however, did not allege the reports received by Beals and Lee contained this detail. SEC Order, ¶21; SEC Compl., ¶¶63-64. Nor does the AC. ¶¶100, 104; *Petrie v. Elec. Game Card*, 2011 WL 165402, at *4 n.2 (C.D. Cal. Jan. 12, 2011) ("It is axiomatic that the complaint may not be amended by [opposition] briefs."). Plaintiffs' attempt to distinguish Defendants' caselaw is equally unavailing. Opp. 17. Because there are no well-pled allegations that the contemporaneous reports contained the level of detail Plaintiffs now suggest, there is no basis to distinguish *Vantive*, *FIGS*, and *Wet Seal*, all of which declined to find a strong inference of scienter notwithstanding the existence of internal data that

allegedly contradicted public statements. Mot. 14; *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999) (requiring report allegations to "include adequate corroborating details").[3]

Plaintiffs' caselaw does not help them. Opp. 16. There, unlike here, defendants specifically touted their access to information contradicting their public statements. *See Nursing Home Pension Fund v. Oracle*, 380 F.3d 1226, 1231 (9th Cir. 2004) (CEO publicly admitted reviewing internal data contradicting his public statements: "All of our information is on one database. We know exactly how much we have sold in the last hour around the world."); *In re Quality Sys. Sec. Litig.*, 865 F.3d 1130, 1145 (9th Cir. 2017) (defendants "told investors they had real-time access to, and knowledge of, sales information"). Plaintiffs make no such allegations here.

Even if Plaintiffs could plead Defendants reviewed the level of detail suggested in the Opposition (they cannot), knowledge of this detail, alone, is insufficient to plead scienter. Plaintiffs must also demonstrate Defendants knew the "failure to reveal [this] fact would likely mislead investors." *In re PDI Sec. Litig.*, 2005 WL 2009892, at \*20 (D.N.J. Aug. 17, 2005); *see Aramic v. Revance Therapeutics*, 2024 WL 1354503, at \*13 (N.D. Cal. April 2, 2024) (knowledge alone "insufficient to show intent to deceive"). They do not.

### 2. Beals' resignation does not support scienter.

Beals' resignation—months after the August 2022 disclosure—does not support an inference of scienter either. Mot. 14-15.[4]

Plaintiffs simply ignore cases finding similar multi-month delays insufficient (Mot. 14-15) and instead cite cases where the departures occurred in tandem with financial restatements, *In re UTStarcom Sec. Litig.*, 617 F.Supp.2d 964, 975-76 (N.D. Cal. 2009), or public apologies acknowledging fault, *In re Volkswagen "Clean*

---

[3] Plaintiffs ignore that both *Silicon Graphics* and *Tesla* dismissed general allegations about inconsistent internal reports because they lacked corroborating details. Opp. 17-18; Mot. 13.

[4] Contrary to Plaintiffs' suggestion (Opp. 18-19), there is no allegation that WM's internal investigation was ongoing when Beals resigned in November 2022.

*Diesel" Mktg., Sales Prac., & Prod. Liab. Litig.*, 2017 WL 66281, at \*15 (N.D. Cal. Jan. 4, 2017). Plaintiffs allege no such facts linking Beals' departure with any issues related to MAU.

Finally, Lee resigned nearly one year after WM's August 2022 disclosure. Ex. S at 519. Plaintiffs do not ascribe anything nefarious to Lee's departure, and ***Beal's*** departure months after the August 2022 disclosure certainly does not give rise to an inference that ***Lee*** acted with scienter.

### C.    Plaintiffs Fail to Plead Falsity.

Another independent basis for dismissal is Plaintiffs' failure to plead falsity. "The PSLRA prescribes an ***exacting*** standard, under which a litany of alleged false statements, unaccompanied by the pleading of ***specific*** facts indicating why those statements were false, is insufficient." *In re Cloudera*, 121 F.4th 1180, 1187 (9th Cir. 2024).

### 1.    The Opposition narrows the set of challenged statements.

Plaintiffs do not address, and therefore abandon, any claim based on statements made in earnings calls (¶¶50-53, 65-68, 78-79) and SOX certifications (¶¶43, 56, 69, 80). *See Ikeda v. Baidu*, 2021 WL 1299046, at \*7 (N.D. Cal. Apr. 7, 2021); *Farhar v. Ontrak*, 714 F.Supp.3d 1198, 1209 (C.D. Cal. 2024).

### 2.    The reported MAU figures and definitions are inactionable.

***MAU Figures.*** Plaintiffs argue the reported MAU figures were misleading because Defendants purportedly failed to disclose that MAU growth was driven by low quality pop-under traffic. Opp. 9-10. The case Plaintiffs cite, *Twitter*, actually highlights the pleading failures here. In *Twitter*, plaintiffs claimed defendants misled investors by omitting that MAU growth was "driven by 'low quality users,' not 'organic growth.'" *Shenwick v. Twitter*, 282 F.Supp.3d 1115, 1144 (N.D. Cal. 2017). The court rejected that argument because "Twitter never claimed that its MAU growth was wholly or even mostly organic"; and it "did not hide its attempts to improve…MAU numbers through marketing efforts." *Id.* at 1144-45. The same is

true here. No challenged statement even mentions the types of users comprising MAU (*e.g.*, organic, direct, paid). And WM disclosed that paid advertising had "outsized impacts on MAU growth" and not all users were equal. Mot. 20. As in *Twitter*, "[a] lack of detailed information on the numbers of these types of users…does not make Defendants' statements about MAU growth misleading." 282 F.Supp.3d at 1145.

Plaintiffs sidestep this, focusing instead on the analysis about Twitter's failure to disclose a *different* user metric: daily active users or DAU. Opp. 10. The court found that omission misleading based on a litany of particularized facts about the importance of DAU and its impact on MAU. *Twitter*, 282 F.Supp.3d at 1136-38. For example, Twitter's CFO called DAU the "most important" engagement metric and described the company's "number-one priority" as "mak[ing] Twitter an increasingly *daily* use case." *Id*. at 1146. Confidential witnesses and analysts confirmed "the centrality of DAU" as "Twitter's primary user engagement metric." *Id*. at 1135-36. And Twitter itself "acknowledged the link between DAU and MAU." *Id.* at 1138. Against this backdrop, plaintiffs "plausibly alleged" that "MAU is unhelpful at best and misleading at worst in the absence of companion DAU data." *Id.*

There are no similar allegations here. No statements from anyone at WM touting user metrics other than MAU. No confidential witness statements from insiders. And no analysts asking about engagement metrics—perhaps because, unlike in *Twitter*, WM's user traffic did not generate revenue. All Plaintiffs allege is that WM internally tracked other metrics, but provide no details to identify their reliability or import, which was the linchpin of the court's ruling in *Twitter*.

**MAU Definitions.** WM provided a two-part definition for MAU, identifying both *what* was captured in MAU and *when*. Mot. 19.

In every instance, WM consistently defined *what* was captured as "the number of unique users *opening* [the] Weedmaps mobile app or *accessing* [the] Weedmaps.com website over the course of a calendar month." Mot. 17-18. The AC

does not allege this definition was false or misleading. *Id.* And Plaintiffs concede that pop-under traffic did "access" the website. Opp. 10. However, they now claim the term "access" was misleading, theorizing that "a reasonable investor" could ascribe volitional intent to the term. *Id.* That untimely argument fails; the AC does not allege the term "access" was misleading, and the Opposition's speculation about what a "reasonable investor" would understand is pure *ipse dixit*.[5] *Scheller v. Nutanix*, 450 F.Supp.3d 1024, 1034 (N.D. Cal. 2020) (rejecting similar speculation).

The second part of the definition addresses *when* MAU was measured: the final month of the period. Mot. 19. The language in the footnotes accompanying the MAU figures is unambiguous: "Monthly active users in this table is for the last month in the period." Mot. 3. Plaintiffs do not claim this definition was misleading. Elsewhere, WM said it counted "the total number of users who have engaged with the weedmaps.com site during the final calendar month of the given period." Mot. 20. Plaintiffs challenge this statement, claiming pop-under traffic did not "engage" with the website. Opp. 11. But they agree "engage" simply means to "give attention to something." *Id.* And there is no well-pled fact that pop-under traffic did not meet this definition. Plaintiffs' only argument is that "most users consider pop-under ads to be an annoyance." *Id.* But the same can be said for nearly any form of advertising—*e.g.*, commercials, billboards, etc. Indeed, advertisements are annoying **because** they demand attention.

***Surrounding Disclosures.*** Plaintiffs agree the Court must consider the full context in which the challenged statements were made. Opp. 11. This includes disclosures about WM's use of paid advertising, which encompassed pop-under ads, and its impact on MAU. Mot. 20. Plaintiffs brush these disclosures aside as mere hypotheticals. Opp. 12 (citing *Flynn v. Sientra*, 2016 WL 3360676, at *10 (C.D. Cal. June 9, 2016)). But unlike *Sientra*, WM's disclosures were not limited to the future; they address the past and present: "our MAUs increased each year ***from 2018***

---

[5] The same is true for the term "active" in "Monthly Active User." Opp. 11.

*through 2020*…due to a number of factors including…increase in marketing spend, including web advertising"; "*in any given period*, an increase or decrease in digital marketing spend…can have outsized impacts on MAU growth." Ex. A at 82-83.

Plaintiffs further quibble that these disclosures were insufficient because they did not list the forms of paid advertising, specifically, pop-unders. Opp. 10-11. But "omissions are actionable only where they make the actual statements misleading; it is not sufficient that an investor merely considered the omitted information significant." *In re Twitter Sec. Litig.*, 506 F.Supp.3d 867, 886 (N.D. Cal. 2020) ("[M]erely mentioning a topic does not require the company to disclose every tangentially related fact that might interest investors."). Thus, even if more detail may have been useful, the omission of such details is not misleading. *In re AnaptysBio*, 2021 WL 4267413, at *7 (S.D. Cal. Sep. 20, 2021) (allegation that more detail "would have been helpful" to "better understand the data" held insufficient to plead falsity).

### 3.   WM's opinion that MAU was a key metric is inactionable.

Plaintiffs do not dispute that WM's characterization of MAU as a key metric is an opinion, and thus, must be analyzed under *Omnicare*. Mot. 16-17; Opp. 12-13. Nor do Plaintiffs claim this opinion is actionable under the first two prongs of *Omnicare* because it was disbelieved when made or contained an objectively false embedded fact. Instead, they argue the opinion was misleading because it "d[id] not fairly align" with information about the impact of pop-under traffic on MAU. Opp. 13 (citing *In re Maiden Holdings Sec. Litig.*, 2025 WL 2406864, at *2 (3d Cir. Aug. 20, 2025)). In *Maiden*, the court found defendants' omission of adverse historical loss data from its loss reserve estimate misleading because the omission directly contradicted the company's representation that it *relied* on such data in calculating reserve estimates. 2025 WL 2406864, at *2. No comparable fact pattern is alleged here.

These statements also constitute inactionable puffery. Mot. 16-17. Plaintiffs ignore Defendants' cases, arguing instead these statements conveyed "concrete facts." Opp. 14. Yet Plaintiffs identify no "facts" supposedly conveyed and their vague reference to "context" is unavailing. *Macomb Cnty. Emps.' Ret. Sys. v. Align Tech.*, 39 F.4th 1092, 1099 (9th Cir. 2022) ("context" did not render puffery actionable).

### D. Plaintiffs Fail to Plead Loss Causation.

Plaintiffs also fail to plead that the November 7, 2022, and September 24, 2024, disclosures support loss causation. Mot. 21-22.

On **November 7, 2022**, Defendants disclosed "WM would no longer be reporting MAU" and "Beals would be stepping down as CEO." ¶¶92-93. Neither was a "revelation of fraudulent activity." *Loos v. Immersion*, 762 F.3d 880, 887 (9th Cir. 2014). Beals' resignation was not a "partial corrective disclosure" (Opp. 21) because Plaintiffs identify no "other partial disclosures" to combine with that resignation and their cases are readily distinguishable. *See Mauss v. NuVasive*, 2016 WL 3681831, at *10 (S.D. Cal. July 12, 2016) (forced resignation); *Epstein v. World Acceptance*, 203 F.Supp.3d 655, 674 (D.S.C. 2016) (multiple departures). And WM's confirmation that it would stop reporting MAU was not revelation of fraudulent activity. Mot. 21.

On **September 24, 2024**, the SEC announced its settlements with Defendants. ¶95. Plaintiffs do not identify any new information or revelation of fraud within this announcement. Mot. 22. And the market apparently saw none—the stock price decreased two pennies. Plaintiffs' conclusory claim that the announcement disclosed "the true state of affairs at WM" falls short of Rule 9(b)'s requirements. *Espy v. J2 Global*, 99 F.4th 527, 541-42 (9th Cir. 2024) (failure to allege "corrective" disclosure with "particularity" when unclear how information "relate[d]" to "the alleged misrepresentations").

Plaintiffs' sole case did not find a $0.02 or 2.13% stock drop sufficient to find loss causation. Opp. 21. To the contrary, *Daniels Family 2001 Revocable Trust v. Las Vegas Sands* acknowledged "securities complaints tend to be predicated on double digit declines" and declined to find loss causation after a 14% stock drop. 709 F.Supp.3d 1217, 1237 (D. Nev. 2024).

### E. Plaintiffs Abandoned Their Scheme Claim.

Plaintiffs do not address, and thus abandon, their scheme claim. *Hollingsworth v. Nextdoor Holdings*, 2025 WL 1433820, at *6 (N.D. Cal. May 19, 2025) (dismissing scheme claim unaddressed in opposition).

## III. CONCLUSION

The AC should be dismissed with prejudice.

Dated: October 9, 2025

COOLEY LLP

By: */s/ Alexandra R. Mayhugh*
Alexandra R. Mayhugh

*Attorneys for Defendants WM Technology, Inc., Christopher Beals, and Arden Lee*

The undersigned, counsel of record for Defendants WM Technology, Inc., Christopher Beals, and Arden Lee, certifies that this brief contains 3,298 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 9, 2025

COOLEY LLP

By: */s/ Alexandra R. Mayhugh*
Alexandra R. Mayhugh

*Attorneys for Defendants WM Technology, Inc., Christopher Beals, and Arden Lee*