**O**

# United States District Court
# Central District of California

SERET ISHAK,

Plaintiff,

v.

WM TECHNOLOGY, INC. et al.

Defendants.

Case № 2:24-cv-08959-ODW (PVCx)

**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [97]**

## I. INTRODUCTION

Plaintiff Seret Ishak initiated this putative class action for violation of the Securities Exchange Act of 1934 (the "Exchange Act") against WM Technology, Inc. and several individuals ("Defendants"). (Compl., Dkt. No. 1; First Am. Compl. ("FAC"), Dkt. No. 48.) The parties have reached a settlement on behalf of the class. (Notice Settlement, Dkt. No. 91.) Lead Plaintiff Jay Kang now moves, without opposition, for preliminary approval of the parties' proposed settlement agreement ("Settlement Agreement"). (Mot. Prelim. Approval ("Motion" or "Mot."), Dkt. No. 97.) For the reasons below, the Court **GRANTS** Kang's Motion.[1]

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

WM is a California-based company that operates an online cannabis marketplace and provides ecommerce and compliance software services for cannabis businesses. (FAC ¶¶ 11–12, 25.) Kang alleges that WM provided investors with inflated metrics that wrongfully indicated company growth and monetization potential in violation of the Exchange Act. (*Id.* ¶¶ 26–28, 114.) The public discovery of WM's misrepresentations caused WM's stock price to drop by more than 25%, from $3.46 a share to $2.59 a share. (*Id.* ¶ 3.) Thus, investors who purchased or acquired shares of WM securities from May 25, 2021, through September 24, 2024 (the "Class Period"), suffered harm. (*Id.* ¶ 1.)

On October 17, 2024, Ishak filed this action on behalf of himself and similarly situated investors. (Compl.) On March 11, 2025, the Court appointed Kang as Lead Plaintiff and designated The Rosen Law Firm ("Lead Counsel") as lead class counsel. (Order Appointing Lead Pl. and Class Counsel ("Appointment Order"), Dkt. No. 44.) On May 12, 2025, Kang filed the operative First Amended Complaint. (FAC.) On February 12, 2026, the parties reached a settlement in this action. (Notice Settlement.) Kang now moves, without opposition, for preliminary approval of the Settlement Agreement. (Mot.)

## III. SETTLEMENT TERMS[2]

The key provisions of the Settlement Agreement are set forth below through reference to Kang's Stipulation of Settlement. (Stip. Settlement ("Settlement Agreement" or "SA"), Dkt. No. 96.)

### A. Relevant Definitions

The parties define the proposed Settlement Class as "all Persons who purchased or otherwise acquired WM Technology Securities between May 25, 2021, and September 24, 2024, inclusive." (*Id.* § 1.32.) The parties define the proposed Class Period as "the period between May 25, 2021, and September 24, 2024." (*Id.* § 1.9.)

[2] All capitalized terms not otherwise defined herein are defined as in the Settlement Agreement.

The parties define a Claimant as "any Settlement Class Member who files a [permissible] Proof of Claim." (*Id.* § 1.6.) The parties also define an Authorized Claimant as "any Settlement Class Member who is a Claimant and whose claim for recovery has been allowed" according to the Settlement Agreement. (*Id.* § 1.3.) The Settlement seeks appointment of Strategic Claims Services ("SCS") as the "Claims Administrator." (*Id.* § 1.8.) Further, the settlement seeks to authorize SCS as "Escrow Agent" to open an "Escrow Account" at The Huntington National Bank. (*Id.* § 1.12.)

**B. Payment Terms**

In full settlement of the claims asserted in the lawsuit, WM agrees to pay $7,500,000 (the "Net Settlement Amount" or "NSA"). (*Id.* §§ 1.31, 2.1(b).) Within thirty days of the Court preliminarily approving the settlement, WM agrees to deposit the NSA into an Escrow Account at The Huntington National Bank, to be managed by SCS. (*Id.* §§ 1.12, 1.13, 2.1(b).) Thereafter, SCS may access up to $275,000 of the NSA to pay administrative costs without the need for further approval. (*Id.* § 3.4.) Following final approval and entry of judgment, SCS may transfer an additional $100,000 from the NSA to pay for "any reasonable and necessary" administrative costs. (*Id.*) All taxes arising from the income earned by settlement funds will be paid out of the NSA, and Defendants will have no tax liability or responsibility. (*Id.* § 4.1(b).)

Each class member that is approved and does not request exclusion ("Settlement Class Member") will receive a pro-rata share of the remaining NSA amount determined by the Settlement Class Member's recognized loss as compared to the total recognized losses of all Settlement Class Members. (*Id.* § 1.22; SA Ex. A-1 ("Long Notice") 9, Dkt. No. 96-2.) SCS will distribute payments to each Settlement Class Member after receiving and approving a Proof of Claim and Release Form ("Claim Form"). (SA § 7.3; Long Notice 8, 13–14.) If any checks remain uncashed six months after distribution, SCS will first use the funds to pay any amounts mistakenly omitted from the initial distribution to Authorized Claimants. (Long Notice 8.) Then, SCS will use the funds to pay any additional administrative costs incurred in administering the

Settlement Agreement. (*Id.*) Finally, funds permitting, SCS will make a second distribution to Authorized Claimants who cashed their checks from the initial distribution. (*Id.*) Six months after the second distribution, any remaining NSA funds will be donated to a cy pres non-profit organization selected by Lead Counsel and approved by the Court, and none will revert to WM. (*Id.* at 8–9.)

**C. Attorneys' Fees, Administrative Costs, and Taxes**

The Settlement Agreement authorizes Class Counsel to petition the Court for approval of attorneys' fees. (SA § 8.1.) It also authorizes Class Counsel to petition the Court for reimbursement of litigation costs and expenses, including reimbursement for Lead Plaintiff's time and expenses. (*Id.*) Further, the Settlement Agreement imposes a plan for SCS to pay all taxes and tax expenses out of the NSA prior to distributing funds to Settlement Class Members. (*Id.* § 4.1(b).) Accordingly, the released parties will have no liability or responsibility for payment of any taxes or tax expenses. (*Id.*)

**D. Releases**

The Settlement Agreement provides that all Settlement Class Members will release WM from any claims asserted in this action and "covenant not to sue any of the Released Parties on the basis of the Released Claims." (*Id.* § 6.1.) "Released Claims" includes all claims that have been or could have been asserted "which arise out of, are based upon, or related in any way to the purchase, acquisition, sale, or disposition of any WM Technology Securities during the Class Period." (*Id.* § 1.27.) Class Plaintiffs are expressly not barred from bringing a claim to enforce the Settlement Agreement or Final Judgement. (*Id.* §§ 1.27, 6.1.)

**E. Notice to Settlement Class**

The parties submit a proposed "Long Notice," a "Postcard Notice," and a "Summary Notice" (collectively, "Notice") with the Motion. (*Id.* § 5.1.) The Postcard Notice will alert potential Settlement Class Members of the Settlement Agreement by mail and provide instructions for accessing the Long Notice online or by mail request. (*Id.*; SA Ex. A-4 ("Postcard Notice"), Dkt. No. 96-5.) The Long Notice informs each

potential Settlement Class Member of the Settlement Agreement and of their options to: (1) participate in the settlement by submitting a Claim Form; (2) opt out of the settlement by sending a letter to the Claims Administrator; or (3) object to the settlement but remain part of the settlement. (SA § 5.1; Long Notice 3.) The Long Notice also provides potential Settlement Class Members with a URL to a website with more detailed information. (Long Notice 7.) The Long Notice provides potential Class Members with additional information on the claims in this litigation and how potential Class Members may be affected by the Settlement Agreement. (*See id.*)

## IV. LEGAL STANDARD

"The claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate . . . ." Fed. R. Civ. P. 23(e)(2).

Courts scrutinize class action settlements "to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Nonetheless, "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Id.* at 1101. Once a court preliminarily approves the settlement, the court "may direct appropriate notice to the class" and grant final approval "only after a hearing." Fed. R. Civ. P. 23(c)(2), (e)(2).

## V. DISCUSSION

The Court first addresses whether the class may be provisionally certified for settlement purposes only. After establishing provisional certification for settlement purposes only, the Court then considers whether it may grant preliminary approval for the Settlement Agreement and reviews the adequacy of the proposed Notice.

### A. Settlement Class Certification

Class certification is a prerequisite to preliminary settlement approval and is appropriate only if each of the four requirements of Federal Rule of Civil Procedure

("Rule") 23(a) and at least one of the requirements of Rule 23(b) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 621 (1997). Under Rule 23(a), the plaintiff must show that: "(1) the class is so numerous that joinder of all members is impracticable"; "(2) there are questions of law or fact common to the class"; "(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and "(4) the representative parties will fairly and adequately protect the interests of the class."

Next, the proposed class must meet at least one of the requirements of Rule 23(b). Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Where class certification is sought for settlement purposes only, the certification inquiry still "demand[s] undiluted, even heightened, attention." *Amchem*, 521 U.S. at 620.

*1. Rule 23(a) Requirements*

The Court previously found that the proposed class meets Rule 23(a)'s typicality and adequacy factors and is aware of no new facts that would alter that conclusion. (Appointment Order 9–12.) First, Kang meets the typicality requirement. Typicality in this context means that the representative claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, all Settlement Class Members purchased or acquired WM securities during the class period. (SA § 1.32.) Accordingly, typicality is satisfied. *See Vignola v. FAT Brands, Inc.*, No. 2:18-cv-07469-PSG (PLAx), 2018 WL 6356109, at *3 (C.D. Cal. Nov. 16, 2018) (finding typicality satisfied in analogous fraud-on-the-market securities class action).

Next, Kang and his counsel satisfy the adequacy requirement for representing absent class members. This requirement is met where the named plaintiff and his counsel do not have conflicts of interest with other class members and will vigorously

prosecute the interests of the class. *Hanlon*, 150 F.3d at 1020. Kang and Lead Counsel are aware of no potential conflicts. (Mem. ISO Mot. ("Mem.") 6–7, Dkt. No. 98.) Counsel appears well-qualified and experienced with securities class action litigation. (*Id.*; Decl. Jonathan Stern ISO Mot. Ex. 1 ("Rosen Law Firm Resume"), Dkt. No. 99-1.) In this action, Lead Counsel sought Kang's appointment as Lead Plaintiff, successfully opposed competing motions for appointment, amended the class action complaint, successfully opposed motions to dismiss, and negotiated in mediation on behalf of the Settlement Class. (SA §§ A–B; Kang Mot. Appoint Lead Pl., Dkt. No. 16; Opp'n Mots. Appoint Lead Pl., Dkt. No. 36; FAC; Opp'n WM Mot. Dismiss, Dkt. No. 84; Opp'n Silver Spike Mot. Dismiss, Dkt. No. 85.) These facts support Lead Counsel's adequacy and vigorous representation of the putative class members. *Hanlon*, 150 F.3d at 1020.

The proposed Settlement Class is also sufficiently numerous. While "[n]o exact numerical cut-off is required," "numerosity is presumed where the plaintiff class contains forty or more members." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009). Further, the numerosity requirement is satisfied in securities fraud cases involving nationally traded stocks where "the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large." *Vinh Nguyen v. Radient Pharms. Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012). There were more than ninety-seven million shares of WM common stock outstanding at the end of the Class Period. (Mem. 5.) After the preliminary approval of the Settlement Agreement, WM agrees to provide Lead Counsel or SCS the customary information concerning the holders of WM Securities during the class period. (SA § 5.4.) Thus, numerosity is sufficient for the purpose of preliminary Settlement Class certification. *In re Cooper*, 254 F.R.D. at 634; *Nguyen*, 287 F.R.D. at 569. However, the Court notes that final approval will require more specificity in the evidence supporting numerosity.

Finally, the claims of the potential class members demonstrate common questions of fact and law. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) ("[C]ommonality only requires a single significant question of law or fact."). Kang

alleges that all potential class members were subject to WM's misrepresentations and omissions when purchasing artificially inflated securities. (FAC ¶¶ 108, 110.) Thus, common questions among the class include whether Defendants made false or misleading public statements during the Class Period, acted with scienter, artificially inflated the market price of WM securities during the Class Period, and whether Settlement Class Members suffered damages by the alleged misrepresentations. At this juncture, no discernable individualized issues appear to detract from these common questions of fact and law. (*See generally id.*) As such, the proposed Settlement Class and its representative satisfy the Rule 23(a) requirements. *Mazza*, 666 F.3d at 589.

*2. Rule 23(b)(3) Requirements*

Rule 23(b)(3) requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Here, whether WM misrepresented and artificially inflated their metrics is a sufficient predominating common question. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 467–68 (2013) (holding materiality of corporation's alleged misrepresentations and omissions is a common question that predominates under Rule 23(b)(3) for a fraud-on-the-market securities class action). Further, a class action appears to be a far superior method of adjudicating the class members' claims. The common question is cohesive as to all potential class members, making numerous individual actions prone to inefficiency. *See id.* at 459–60 (holding a material common question of misrepresentation is best suited to the adjudication of a controversy through class action). Accordingly, the class meets the requirements of Rule 23(b)(3).

As each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met, the class may be provisionally certified for settlement purposes. *Amchem*, 521 U.S. at 620.

**B. Preliminary Settlement Approval**

Courts may approve a class action settlement agreement only when the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "At the preliminary approval stage, the court evaluates the terms of the settlement to determine whether they are within a range of possible judicial approval." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016) (citation modified). At this stage, a "full fairness analysis is unnecessary" because the court must hold a hearing before giving final approval. *Grady v. RCM Techs., Inc.*, 671 F. Supp. 3d 1065, 1072 (C.D. Cal. 2023). Thus, "the settlement need only be *potentially* fair." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007). Ultimately, "[t]he initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Officers for Just. v. Civ. Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

To determine whether a settlement is "fair, reasonable, and adequate," courts consider the following factors: whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2), *Lalli v. First Team Real Est.-Orange Cnty.*, No. 8:20-cv-00027-JWH (ADSx), 2022 WL 8207530, at *3 (C.D. Cal. Sept. 6, 2022).

*1. Adequate Class Representation*

Having previously found that Lead Counsel and Kang were adequate representatives for purposes of class certification, the Court now finds that Lead Counsel and Kang have adequately represented the class. (Appointment Order); *see In re Snap Inc. Sec. Litig.*, No. 2:17-cv-03679-SVW, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021) (finding adequate representation where court had previously appointed class representatives and class counsel and both had "prosecuted the case with diligence and success"). For the same reasons as above, at this preliminary approval stage, the Court finds adequate class representation. *In re Snap*, 2021 WL 667590, at *1.

*2. Negotiated at Arm's Length*

In evaluating a proposed settlement, courts focus on whether "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Just.*, 688 F.2d at 625. A court may preliminarily approve a settlement if the proposed settlement, among other things, "appears to be the product of serious, informed, non-collusive negotiations, [and] has no obvious deficiencies." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Where attorneys' fees originate from a common recovery fund that feeds monetary relief to class members, courts assess the fees with more skepticism because of the "potential for conflict in the allocation." *Lopez-Venegas v. Johnson*, No. 2:13-cv-03972-JAK (PLAx), 2015 WL 13916876, at *9 (C.D. Cal. Feb. 25, 2015); *cf. Knisley v. Network Assocs., Inc.*, 312 F.3d 1123, 1125 (9th Cir. 2002) (stating that one risk of class action settlement is that "class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee").

No facts in the record suggest fraud, overreaching, or collusion. Rather, the record suggests zealous advocacy on both sides, as seen in multiple contested motions and mediation. Therefore, for the purpose of preliminary approval of the settlement, the Court finds the parties negotiated the Settlement Agreement at arm's length.

*3. Adequate Relief for the Class*

To determine whether "relief provided for the class is adequate," courts consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class . . . ; (iii) the terms of any proposed award of attorney's fees, including timing of payment;" and (iv) any agreement made in connection with the proposal. Fed. R. Civ. P. 23(e)(2)(C); *Lalli*, 2022 WL 8207530, at *4. Further, "the Ninth Circuit asks district courts to undertake an additional search for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Lalli*, 2022 WL 8207530,

at *3 (citation modified). This additional search requires courts to consider: "(1) whether counsel 'receive[d] a disproportionate distribution of the settlement'; (2) whether the parties agreed to a 'clear sailing arrangement'; and (3) whether the settlement includes a 'kicker' or 'reverter' clause." *Id.* (alteration in original) (quoting *Briseño v. Henderson*, 998 F.3d 1014, 1026–27 (9th Cir. 2021)).

First, the Settlement provides adequate relief for the class. The Settlement Class Members stand to gain 7.72% of the maximum estimated, maximum class-wide damages—substantially more than Settlement Class Members have recovered in similar actions. (Mem. 19); *see In re Regulus Therapeutics Inc. Sec. Litig.*, No. 3:17-cv-182-BTM-RBB, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving recovery for 1.99% of total estimated damages in securities litigation); *Kendall v. Odonate Therapeutics, Inc.*, No. 3:20-cv-01828-H-LL, 2022 WL 1997530, at *6 (S.D. Cal. June 6, 2022) (approving recovery for 3.49% of the maximum estimate damages in securities litigation). Second, the costs, risks, and delay of appeal favor preliminary approval of the Settlement Agreement. Without a settlement, there is a substantial risk that the parties will expend further resources through trial and a potential appeal. (Mem. 14–15.) Third, the proposed method of distributing the monetary relief to the Class—here, appointing SCS to will pay Authorized Claimants their pro-rata share of the NSA—is effective. (*Id.* at 15–16; Long Notice 9.)

There is also no indication of foul play in the negotiations by Lead Counsel. The Settlement Agreement does not contain a kicker or a reverter clause, nor does it include a clear sailing arrangement. (*See generally* SA.) Moreover, the Settlement Agreement expressly provides that an award of attorneys' fees are not conditions of the settlement "and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement." (SA § 8.3.) Therefore, the negotiations do not reflect "subtle signs" that Lead Counsel may have prioritized their gains over those of the class members. *Lalli*, 2022 WL 8207530, at *3.

For the foregoing reasons, and for the purpose of preliminary approval of the settlement, the Court finds that the Settlement Agreement provides adequate relief to the Settlement Class. *Id.*

*4. Equitable Treatment of Class Members*

Lastly, the Court must ensure that "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). A court may preliminarily approve a settlement and direct notice to the class if "the proposed settlement . . . does not improperly grant preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079. Here, the Settlement Agreement treats all members of the Settlement Class equally, awarding each Settlement Class Member a pro-rata share of the NSA based on their investments. (SA § 7.1; Long Notice 7–8.) As the Settlement Agreement makes no distinctions among class members, it treats class members equitably relative to each other. (SA § 7.1; Long Notice 7–8.) Therefore, the Court finds that the Settlement Agreement is within the range of possible judicial approval, and preliminary approves the Settlement Agreement. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.

**C. Sufficiency of Notice**

To evaluate a class settlement notice, the Court must analyze the notice type and the notice content. Fed. R. Civ. P. 23(c)(2)(B).

*1. Type of Notice*

Under Rule 23, "the court must direct to class members the best notice that is practicable under the circumstances." *Id.* Once a court determines it is likely to approve a class settlement, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).

After preliminary approval of the Settlement Agreement, WM will provide Lead Counsel or SCS the customary information concerning the holders of WM securities during the Class Period. (SA § 5.4.) Using the information provided by WM, SCS will email links to the Long Notice and Claim Form, or if no email address can be obtained,

will mail the Postcard Notice to Settlement Class Members with information on how to reach the Long Notice and submit a Claim Form. (Mem. 21; SA §§ 5.3–5.4; Postcard Notice 2.) SCS will also post the Long Notice, Claim Form, and Settlement Agreement on a website maintained by SCS and disseminate a "Summary Notice" with the same essential information over a national newswire. (Mem. 21.) The Settlement Class Members will be able to submit their Claim Forms electronically via the website, or via mail. (*Id.*; Long Notice ¶ 9.) The Settlement Class Members will also be able to submit their request to be excluded from the settlement via mail. (Long Notice ¶ 11.) The Court finds these procedures for notice reasonable for Settlement Class Members under the circumstances.

*2. Content of Notice*

For a class certified under Rule 23(b)(3), class notice must "clearly and concisely state in plain, easily understood language," the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

In the Long Notice, the parties sufficiently describe the nature of the action, the class certified, the claims, and the issues in the action. (Long Notice ¶¶ 1–2.) The parties also adequately explain the terms of the Settlement Agreement. (*Id.* ¶ 8(a).) The parties inform class members of the rights they will waive if the Court finally approves the Settlement Agreement. (*Id.* ¶ 10.) The parties provide instructions for Settlement Class Members to submit their Claim Forms to opt-in to the settlement, (*id.* ¶ 9), and instructions for Settlement Class Members to object to or request exclusion from the Settlement Agreement, (*id.* ¶¶ 11, 15–16). These provisions satisfy Rule 23(c)(2)(B).

Additionally, the Court requires WM's logo to appear prominently on the Postcard Notice, Summary Notice, and Long Notice. With this addition, the Court finds the parties' proposed Notice content sufficient for preliminary approval.

## VI. CONCLUSION

For the reasons above, the Court **GRANTS** Kang's Motion for Preliminary Approval. (Dkt. No. 97.) The Court (1) conditionally approves class certification for purposes of settlement, (2) preliminarily approves the Settlement Agreement, and (3) approves the form and method of the parties' proposed Postcard Notice, Summary Notice, and Long Notice, conditioned on the prominent addition of WM's logo on each. The Court appoints SCS as Claims Administrator and The Huntington National Bank as the Escrow Account.

The Final Approval Hearing shall be held on **January 11, 2027, at 1:30 p.m.**, at the Felicitas and Gonzalo Mendez United States Courthouse, 350 West First Street, Courtroom 5D, Los Angeles, CA 90012. All Claim Forms, requests for exclusions, and objections must be postmarked or received by SCS no later than **October 30, 2026**. No later than **November 6, 2026**, the parties shall file with the Court any objections received or a notice that no objections were received. No later than **November 16, 2026**, Kang shall file with the Court a motion for final approval of the settlement. No later than **November 23, 2026,** Counsel shall file the application for attorneys' fees and costs. Oppositions to either motion must be filed no later than **December 7, 2026**. If

any opposition is filed, either party may file a reply in support of any opposed motion no later than **December 14, 2026.**

**IT IS SO ORDERED.**

July 20, 2026

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**